**Donna UTTER, Appellant,**

v.

**Richard UTTER, Appellee.**

No. 52793.

Supreme Court of Iowa.

Jan. 9, 1968.

Bernard L. Willis, Lake City, for appellant.

Pendleton & Pendleton, Storm Lake, for appellee.

MASON, Justice.

Plaintiff Donna Utter filed petition for divorce against defendant Richard Utter, alleging cruel and inhuman treatment such as to endanger her health and life. She asked custody of the three minor children, two of whom were born to this marriage and the older daughter born to a previous marriage of plaintiff and later adopted by defendant, child support, award of property, suit money, attorney fees and other relief. When the petition was filed plaintiff secured an injunction restraining defendant from coming on or about the family residence at Storm Lake and from threatening, striking or otherwise interfering with plaintiff or her minor children during the pendency of the suit.

Defendant filed answer and cross-petition denying plaintiff's right to a divorce and himself asking a divorce, alleging cruel and inhuman treatment toward him and that

Donna has been openly keeping company with Eldon Lenox, frequenting bars and taverns, going to his apartment and conducting herself in an improper manner.

The contested issues in the case involved the grounds for divorce, custody of the children, property rights and alimony.

Following trial, defendant was granted a divorce and custody of the two youngest children subject to certain visitation rights to the mother. Plaintiff was awarded custody of the older daughter, $85 per month child support and permanent alimony of $7500.

Plaintiff appeals, assigning as the proposition relied on for reversal error in awarding defendant custody of the two youngest children, Ronda, 8 and Randy, 11, and making an unfair award of property and alimony. No attack is made on the granting of a divorce to defendant on his cross-petition.

■ I. The trial court's decree was filed February 2, 1967. On February 6 defendant paid the $7500 into court, and it was forthwith paid over and accepted by plaintiff. Having accepted the financial benefits incident to the decree she may not now raise questions of property settlement or alimony. Jensen v. Jensen, Iowa, 147 N.W.2d 612, 617, and citations. Of course, this does not estop plaintiff from appealing and securing our consideration of the child custody question. Jackson v. Jackson, 248 Iowa 1365, 1376, 85 N.W.2d 590, 597.

II. The remaining issue is thus whether custody of Ronda and Randy should go to defendant.

■ The best interest of the child is the first and governing consideration in determining who is entitled to custody of minor children of divorced parents, all other considerations such as parental rights and desires must yield readily to such determination and the court's decision must be based upon what will be most conducive to the general welfare of the children. Author-

ities need not be cited for this. Rule 344(f) (15), Rules of Civil Procedure.

■ There is a presumption that generally it is best for small children to be in the care of their mother but this is not strong, and yields readily to other considerations. Harwell v. Harwell, 253 Iowa 413, 418, 112 N.W.2d 868, 872, and citations.

■ Although we review the evidence de novo we give weight to the trial court's decision, especially in the matter of credibility of witnesses, because of his superior position to determine the real truth. Rasmussen v. Rasmussen, 252 Iowa 414, 419, 107 N.W.2d 114, 117, and citations.

III. The trial court found defendant fit and suitable to have custody of Ronda and Randy and it was in their best interest that he be awarded their care, custody and control subject to visitation rights given plaintiff.

After graduating from Storm Lake high school plaintiff attended Buena Vista College one semester. Her first marriage ended in divorce four years before this marriage. She had been working in the telephone office at $75 a week before marrying defendant June 6, 1954, in Storm Lake. They lived together until approximately June 28, 1966.

Defendant, 39 at trial time, had graduated from Buena Vista, worked five years as a high school athletic coach and teacher and was so employed at Newell at the time of his marriage to plaintiff. Later he spent a year as a Farm Bureau field man at Red Oak. He next became district manager for Hillard Chemical Company at Storm Lake. He continued in this employment about ten years before terminating his relationship with them September 1, 1966. In September 1965, he started work for Mutual of Omaha.

As bearing on what appears to be for the best interest and welfare of these children we turn to the trial court's decree.

The court found that since early April 1966 plaintiff had been associating with Eldon Lenox who resides in an apartment in Storm Lake; she had been alone with him on numerous occasions in April through November 1966. They had kissed and embraced in his car, her car, various bars, and public amusement places. July 9, 1966, while with Lenox plaintiff was intoxicated at the Powder Puff. Several times plaintiff has been with Lenox in his apartment late at night. Several other specific times when plaintiff had been with Lenox she came home at hours between 12:30 and 5:00 a. m.

In April, while defendant and Randy were away at the Drake Relays in Des Moines, plaintiff was with Lenox in his apartment and walked home in early morning. On a night in early May, about 11:15, Mrs. Scott, living in another unit of the same apartment house, saw plaintiff walk from the apartment house with Lenox to her car parked in the alley behind the apartment house, get in the car and drive away. Lenox returned to his apartment. Mrs. Scott saw this same car parked in the alley behind this apartment house on numerous occasions that spring. On another night last spring before this action was instituted, while defendant and Randy were at Lake Okoboji, plaintiff called Lenox from her home and Lenox and his brother then came to the Utter house. Plaintiff has indicated her desire for Lenox, stating she would give up anything for him.

In cross-examination of plaintiff, defendant laid the grounds for impeachment by asking her about her association with Lenox. The substance of her answers was that she knew Lenox, had been with him only in the presence of others and a denial of everything else. Her testimony on these points was totally impeached by defendant's witnesses who clearly established the extent of plaintiff's relationship with Lenox.

■ From our review of the record we agree with these findings of the trial court although defendant's conduct especially on one occasion was not beyond censorship.

■ In all cases motherhood is a factor to be given weight in deciding questions of child custody and not every act of indiscretion or immorality should deprive a mother of the custody of her children because we recognize that a parent who has been guilty of some indiscretion or even immorality may reform and be capable of making a proper home for children. However, moral transgressions of the mother must be considered together with other relevant factors including the habits and propensities of the parties desiring custody of children in determining what is best for the child. Wendel v. Wendel, 252 Iowa 1122, 1125–1126, 109 N.W.2d 432, 434, and citations; Fritz v. Fritz, Iowa, 148 N.W.2d 392, 397.

■ Plaintiff's contention that the trial court deprived her of custody as punishment for improper conduct and ill-advised denial of her associations with Lenox is without merit. This court has neither the right nor the inclination to punish or reward either parent in matters of this kind. Dean v. Dean, 244 Iowa 1297, 1313, 60 N.W.2d 551, 560; Wendel v. Wendel, supra; Harwell v. Harwell, supra, 253 Iowa at 420, 112 N.W.2d at 873; Fritz v. Fritz, supra.

There is in addition to evidence showing plaintiff's continued affair with another man her apparent disregard for truthfulness and the sanctity of an oath as demonstrated by her testimony on cross-examination where she repeatedly denied facts relevant to her conduct with Lenox.

The children had been living with plaintiff in the home of the parties during pendency of this action. Plaintiff is a good housekeeper and keeps the home and the children orderly and clean. Defendant in seeking custody of the children proposed to live in the home of the parties and have his mother, 69 or 70, assist in their care. The home was described as average and completely furnished.

We realize the assistance of defendant's mother in raising these young children does not present the ideal situation. However, seldom if ever do we find an ideal situation for children from a broken home.

On the whole we are satisfied with the trial court's disposition of the question of child custody.

The cause is

Affirmed.

All Justices concur.