Richard W. RAABE, Appellant,

v.

Sally J. RAABE, Appellee.

No. 54085.

Supreme Court of Iowa.

Nov. 11, 1971.

John K. von Lackum, Jr., Cedar Rapids, for appellant.

Stephen B. Jackson, Cedar Rapids, for appellee.

REYNOLDSON, Justice.

Plaintiff husband brought this divorce action on March 3, 1969, under our former divorce law, chapter 598, Code, 1966. Following a written stipulation regarding property rights, defendant wife proved her counterclaim and was granted a divorce on July 7, 1969. Pursuant to agreement of parties, trial court reserved the question of custody of Michael Patrick, their only child. The paternal grandparents intervened. The

custody issue was tried from July 7 to July 10, 1969. In course of trial the petition of intervention was stricken and on August 7, 1969 custody of the minor son was awarded to defendant mother with liberal visitation rights granted the father and paternal grandparents. The father appeals and we affirm.

Plaintiff Richard Raabe and defendant Sally Raabe were married June 3, 1961 in Mt. Clemens, Michigan, defendant's hometown. In 1963 these parties lived in Iowa City where defendant was employed and plaintiff was attending the University. Defendant became pregnant in June 1963, a fact which disturbed plaintiff. In late November or early December of 1963 he asked defendant for a divorce and filed a petition. In February 1964 plaintiff and his father returned defendant to Mt. Clemens, Michigan, where Michael Patrick was born March 17, 1964. The record is clear plaintiff did not want a child at that time and he was not in Mt. Clemens at the time of birth. However, in the spring of 1964, divorce action he brought was dismissed and the parties reunited.

It is further established that from about September 1964 until this cause was tried, Michael spent from 75 to 95 percent of his time with his paternal grandparents, Paul Raabe and LoVerne Raabe.

A detailed recital of the unhappy facts in this case would be of little precedential value and might be detrimental to the apparent affectionate relationship between defendant and the grandparents, Paul and LoVerne.

During most of this marriage plaintiff was an animated financial disaster. His interests ran to sport car racing and bowling, not fatherhood. Original relinquishment of Michael to the grandparents Paul and LoVerne arose from economic crises and was a "baby-sitting" arrangement. Defendant testified her employment, the financial problems, and the marital discord between her and plaintiff were the reasons Michael was not returned to the parental home. Both parties, however, failed in parental responsibilities for several years. During this time Paul and LoVerne provided the child with a good home and loving care. Michael was solely dependent on them financially and they helped support his parents. Throughout this period defendant seemed more desirous than plaintiff to have Michael returned to their home. She impressed trial court as being concerned with her son's welfare and determined to make a home for him. Defendant had made efforts, as had the grandparents, to provide Michael with religious training.

At time of trial plaintiff was 31 years old, defendant was 30 years old, the paternal grandmother and grandfather, 50 years and 56 years of age respectively. Paul Raabe was seriously ill the prior year and had not returned to full-time farming. The record indicates the usual and wholly understandable concern of grandparents for the care and safety of a grandchild, perhaps more pronounced here because of the obligation of almost total care they assumed for approximately five years.

Mr. Burton Galaway, a social worker hired by defendant's counsel, testified defendant's home was suitable for rearing Michael. Galaway was in the home only a limited time, saw Michael there only once, and had no knowledge of plaintiff's (parental) home. Without questioning Mr. Galaway's competency, we attribute little weight to his opinion. His testimony did point up, however, the wide age difference between Michael and the grandparents. Mr. Galaway testified this would have future impact should the child remain in that home.

▆ Custody of Michael was transferred to defendant by decree dated August 7, 1969, more than two years ago. Record was not filed in this court until

December 28, 1970. Thereafter plaintiff's counsel obtained four time extensions for filing briefs. Defendant's counsel obtained one. This court will of course rule on the basis of the record made in the district court, but we cannot ignore the fact Michael has been with defendant for two years and undoubtedly has been in school attendance in the neighborhood of her home.

Plaintiff's counsel neither applied for a stay order from this court nor pressed this appeal to a speedy conclusion. Under these circumstances we entertain a question of how anxious the father actually is to have the responsibility of this child.

Issues raised in this appeal will be considered in two divisions.

I. *Was custody of the minor son rightfully awarded to the mother?*

Our scope of review in this equity action is de novo. Rule 344(f) (7), Rules of Civil Procedure. However, what we said in Harwell v. Harwell, 253 Iowa 413, 420–421, 112 N.W.2d 868, 873 (1962) is relevant:

"The case is of that class in which the decision of the trial court is peculiarly entitled to respect. The court saw all the parties and witnesses; it was in much closer touch with the entire situation than we can possibly be."

Similar language is found in Norenberg v. Norenberg, 168 N.W.2d 794 (Iowa 1969) and in Alex v. Alex, 161 N.W.2d 192 (Iowa 1968).

■ Our first and governing consideration must be the best interest of the child. Rule 344(f) (15), R.C.P. We interpret this to mean the long-range interests as well as the immediate interests of the child.

Trial court in its findings acknowledged and we agree this case was difficult to determine. However, after acknowledging the difficulty of determination, trial court awarded custody to the mother while giving liberal visitation rights to both grandparents and father. We find no reason to overturn this adjudication. Trial court had the advantage of viewing the parties as they testified and judged their credibility. As in Dunaway v. Dunaway, 189 N.W.2d 480 (Iowa 1971), we suspect that the trial court, after seeing and hearing the witnesses, felt the long-range interests of the boy lay with the mother's custody.

■ We have recognized there is no hard and fast rule as to which parent or other person should be awarded child's custody, and each case should be decided on its own facts. Kayser v. Kayser, 164 N.W.2d 95 (Iowa 1969). We have also said that in all cases motherhood is a factor to be given weight in deciding questions of child custody. Utter v. Utter, 261 Iowa 683, 155 N.W.2d 419 (1968); Harwell v. Harwell, 253 Iowa 413, 112 N.W.2d 868 (1962). This factor has been given little weight in situations involving indiscretion on part of the mother. Kayser v. Kayser, 164 N.W.2d 95 (Iowa 1969); Utter v. Utter, 261 Iowa 683, 155 N.W.2d 419 (1968). Here there is no evidence of indiscretion on the part of defendant mother. This lends weight to trial court's decision to award custody to her. We do not elevate this inference that a small child's best interest lies with his mother to status of a fixed presumption. However, in the situation where other factors hang in balance, we find this concept will support trial court's custody award. We find no cogent reasons to disturb Michael's life again by removing him from his mother's home where he has resided for more than two years.

II. *Is defendant mother entitled to attorney fees on appeal, and if so, in what amount?*

On July 2, 1971, defendant filed an application in this court for attorney fees for services and expenses relating to this appeal. An extended itemization of such attorney fees and expenses, attached to the application, totals $1620.10.

In reply brief plaintiff denies the right to attorney fees. These parties stipulated in district court, "Each of the parties shall pay his or her own attorney." This stipulation was incorporated by reference in the decree of divorce entered July 7, 1969. Plaintiff relies on Thorn v. Kelley, 257 Iowa 719, 134 N.W.2d 545 (1965). That certiorari action involved allowance of attorney fees where *no* divorce was granted. It has no application here. We have allowed fees in other cases in which divorce was decreed prior to determining custody. Jackson v. Jackson, 248 Iowa 1365, 85 N.W.2d 590 (1957).

■ We hold the stipulation of these parties in district court respecting fees was intended only to govern the litigation there, not on appeal. As support for this holding, see Haldane v. Haldane, 210 Cal.App.2d 587, 26 Cal. Rptr. 670 (1962); Keller v. Keller, 171 A.2d 511 (D.C.Mun.App.1961); Drespel v. Drespel, 56 Nev. 368, 45 P.2d 792, 54 P.2d 226 (1935). Defendant was obligated to defend trial court's decision and is entitled to an allowance for attorney fees on appeal. Such an allowance depends upon the wife's financial needs and ability of the husband to satisfy them. Hand v. Hand, 257 Iowa 643, 133 N.W.2d 63 (1965); 24 Am.Jur.2d, Divorce and Separation § 595, p. 718, 27A C.J.S. Divorce § 222, p. 973. We do not fix the total fee; we merely determine that portion which shall be paid by opposing party. Conkling v. Conkling, 185 N.W.2d 777 (Iowa 1971).

■ Defendant receives only $15.00 per week child support. Obviously she carries the major financial burden of Michael's support. At time of trial plaintiff was employed but as usual was in economic difficulty and forced to use his father's car. We find plaintiff should pay $800.00 toward defendant's attorney fees. Any amounts owed over said sum shall be her responsibility.

We affirm trial court's decree, and remand for entry of attorney fees as allowed in this opinion.

All Justices concur.