**In re the Marriage of Sheila J. Neff and Edward G. Neff.**

**Upon the Petition of Sheila J. NEFF, Appellee,**

**v.**

**And Concerning Edward G. NEFF, Appellant.**

**No. 54781.**

Supreme Court of Iowa.

Dec. 15, 1971.

D. B. Hendrickson, of Walker, Concannon & Hendrickson, Keokuk, for appellant.

Charles O. Frazier, Keokuk, for appellee, in the trial court only.

MASON, Justice.

Edward G. Neff, respondent in a dissolution of marriage proceeding, appeals from the portion of the decree awarding petitioner, Sheila J. Neff, custody of the youngest of their three minor children.

Mrs. Neff initiated proceedings in September 1969 to obtain a divorce, custody of the children and other relief under what was then chapter 598, The Code, 1966. Mr. Neff filed answer and counterclaim admitting the birth and ages of the children and denying the remaining allegations of the petition. By way of counterclaim he asked for a divorce, custody of the children and other relief.

The Second Session, Sixty-third General Assembly, chapter 1266 repealed the Iowa divorce statutes and enacted a dissolution of marriage procedure which became effective July 1, 1970 and now appears as chapter 598, The Code, 1971. The legislature made provision in section 598.33 for actions pending at the time of adoption of the new procedure:

"Actions pending—agreement to proceed. Any cause of action pending upon July 1, 1970 which may be affected by this chapter, may be decided pursuant to the provisions of this chapter if both parties to the action so agree."

The parties filed a written agreement July 1, 1970 to proceed under the new chapter.

The parties were married December 24, 1954 when Mrs. Neff was 17 and Mr. Neff, 25. She had a ninth grade education; Mr. Neff had received a Master of Science degree in education but did not follow teaching as a vocation. He took up farming after leaving college. Three children were born as the issue of this marriage, Christie on August 16, 1955, Edward on September 6, 1961, and Kurt on March 2, 1967. The parties separated in August 1968 when Mrs. Neff left the family home near Ferris, Illinois, taking Kurt with her to Keokuk, Iowa, approximately 10 miles away. Shortly thereafter the two oldest children came to

live with her in Keokuk where they finished the first semester of school. About this time the two oldest children returned to the Illinois farm to live with their father. There was some dispute in the record as to whether this occurred late in 1968 or early in 1969. The trial court found a resolution of this difference was not necessary or material to the case. In any event, since that time Kurt has continued to live with his mother in Keokuk and the other two children with their father.

Trial commenced October 29, 1970 and the decree of dissolution was entered November 13. The trial court found that although both parties were suitable to have custody of the three children, the best interests of the children required that the two oldest reside with their father and the younger boy with his mother.

Based on these findings the court awarded their custody accordingly with visitation rights with the children in the other's custody at all reasonable times, dissolved the marriage relationship and awarded Mrs. Neff $17.50 per week for the support of Kurt, $750 as permanent alimony, $750 as a property settlement and an allowance toward attorney fees. Such other property as the parties had accumulated was awarded to the husband.

In the one proposition relied on for reversal respondent asserts the trial court erred in finding the best interests of Kurt Neff would be best served by awarding his custody to petitioner. In written argument Neff seeks to support this proposition in two brief points contending the circumstances reveal the best interests of the child would be fostered by awarding custody to him and brothers and sisters should not be separated except where circumstances require.

Mrs. Neff was not represented by counsel in oral argument at time of submission nor have we been furnished with a written brief and argument on her behalf.

I. This is an equity action and it is our duty to consider and determine the case anew. Rule 344, Rules of Civil Procedure. While weight will be given to the findings of the trial court, this court will not abdicate its function as triers de novo on appeal. Baker v. Starkey, 259 Iowa 480, 490, 144 N.W.2d 889, 895. In this connection it is our responsibility to review the credible evidence and adjudicate rights anew on propositions properly presented, provided issues have been raised and error, if any, preserved in the course of the trial court's proceedings. Nelken v. Nelken, 176 N.W.2d 195, 201 (Iowa 1970).

In Lovett v. Lovett, 164 N.W.2d 793, 802 (Iowa 1969), we quoted this statement from Utter v. Utter, 261 Iowa 683, 685–686, 155 N.W.2d 419, 421–422:

" 'The best interest of the child is the first and governing consideration in determining who is entitled to custody of minor children of divorced parents, all other considerations such as parental rights and desires must yield readily to such determination and the court's decision must be based upon what will be most conducive to the general welfare of the children. Authorities need not be cited for this. Rule 344(f) (15), Rules of Civil Procedure. * * *.' "

We have also said a brother and sister should not be separated and lose the benefit of constant association with one another except where the circumstances require it. McKay v. McKay, 253 Iowa 1047, 1053, 115 N.W.2d 151, 154, and citations.

Both principles have been consistently relied on by this court in decisions involving child custody issues and repeal of the divorce statute under which they were pronounced has not affected their weight in determining child custody matters in dissolution proceedings under the new law.

In Forsyth v. Forsyth, 172 N.W.2d 111, 114 (Iowa 1969), we said:

" * * * It is generally assumed the best interest of younger children is served by placing them in their mother's custody. However, this is an inference rather than a

legal presumption and as such readily yields to evidence tending to show otherwise. * * * [citing authorities]."

The foregoing principles are easier to state than they are to apply since each case presents a different factual situation.

II. The trial court found Mr. Neff's major complaint regarding his wife's care of Kurt was based on the fact the child was left at the home of a babysitter much of the time whereas respondent had made plans, should he receive custody of the child, to place him in a pre-school during the day and have him at home during the evening and night hours with his brother and sister.

Due to her limited education, Mrs. Neff has not been able to secure favorable employment. At time of trial petitioner was employed as a waitress earning a salary of $38 per week. Tips increased her earnings to between $45 and $50 per week. She worked a split shift, making it necessary that the child in her care spend much of the time in the home of the babysitter. Her regular hours are from 12 noon until 2 p. m. and 5 until 10 p. m. In addition she works in the morning from 7:30 until 9:00 when she is needed or when other employees are not present. Sunday is her only day off.

Petitioner takes Kurt to the home of the babysitter about 4 p. m. Most of the time he stays all night at the sitter's home since he is in bed when the petitioner leaves work in the evenings. On those days when she works from 7:30 to 9:00 a. m., Mrs. Neff does not take the child from the home of the babysitter until 2 p. m. On other occasions she picks the child up around 9 a. m. Sometimes petitioner takes the child to her place of employment while she works a short period in the morning.

Mrs. Neff pays $25 per week for babysitters, $60 a month for an apartment. The rent is shared by another lady who lives with Mrs. Neff "on and off."

In the ten-month period preceding trial Mr. Neff had contributed a total of $170 toward Kurt's maintenance and support, $100 of which was paid to a doctor and a pharmacy.

There was testimony that while the parties were living together Mrs. Neff kept late hours when participating in a bowling league, frequently drinking to excess. The parties had originally met in a bowling alley. There is no showing of any misconduct by Mrs. Neff since the separation which would reflect unfavorably on her character as a fit mother. In fact, she was described by witnesses as a "good mother." Mr. Neff complained that on one occasion after their separation when he took the two children to Keokuk to visit their mother, a man brought her home on a motorcycle about 10:30 p. m. In his opinion this didn't look good for her and did not set a very good example for the children. We do not find this complaint sufficient to deprive a mother of the custody of her children. Utter v. Utter, 261 Iowa at 687, 155 N.W.2d at 422; Lovett v. Lovett, 164 N.W.2d at 802.

Of course, one possible solution of the babysitting complaint could be an increase in the amount of child support required of the father. But as in most cases of this type there isn't the money or financial ability to meet all that might be required to make an ideal situation.

Respondent lives in a five- or six-room farmhouse which was described as neat and clean. Christie and Edward each have a bedroom. Mr. Neff sleeps on a couch. Christie helps with the dishes, keeps her room clean and irons. Respondent fixes supper and does the other housework. When Edward gets home from school he usually rides his bicycle or walks to his cousin's home a half mile away and spends an hour or two. The cousin is 12 or 13 years old. At time of trial Neff had made no plans to secure assistance in the house but explained that he had two or three cousins and an aunt who would be willing to help in looking after Kurt during the vacation periods of the nursery school.

The trial court, faced with a difficult problem, found the children were all doing

well and for two years before trial had been adjusting to their circumstances. The court expressed the hope that some realistic support for Kurt from respondent might remedy the problem with respect to the amount of time the child is away from its mother.

 What is for the best interest and welfare of the child—our primary concern —is not easily determined with always a chance of human failure. However, we have weighed the benefits to Kurt being with his mother and given them consideration along with the detriments and conclude as triers of the facts anew that under the factual circumstances the best interest and welfare of Kurt Neff would be best served by awarding his custody to petitioner.

The factual circumstances in the case before us distinguishes it from Tschappat v. Kluver, Iowa, 193 N.W.2d 79 (1971).

The case is therefore—affirmed.

All Justices concur.