In re the MARRIAGE OF William Patrick
DAWSON and Diane Eliza-
beth Dawson

Upon the Petition of William Patrick
DAWSON, Appellant,

and Concerning Diane Elizabeth DAWSON,
Appellee.

No. 2–56383.

Supreme Court of Iowa.

Jan. 16, 1974.

Gary L. Robinson and Richard D. Raymon, Cedar Rapids, for appellant.

Dumbaugh, Gutz, Booth & Gross, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and McCORMICK, JJ.

LeGRAND, Justice.

We are asked to decide here only the question of child custody under a decree of dissolution terminating the marriage of the parties hereto. Custody was awarded to the respondent mother and we affirm.

William Patrick Dawson, hereafter referred to as William, and Diane Elizabeth Dawson, hereafter referred to as Diane, were married on April 5, 1969. They have one child, Michael John Dawson, who was three years old at the time of trial. Diane also had a child by a previous marriage, Christopher Allen Dawson, who was adopted by William, and who was nine years old when the case was tried.

Diane and William separated in March, 1972. After several petitions for dissolution of marriage, one by William and one by Diane, had been filed and dismissed, the petition upon which the marriage was eventually terminated was filed by William on January 18, 1973. The decree awarded custody of both children to Diane.

The question before us is narrowly limited because William's appeal is based solely on his claim that Diane is morally unfit to have custody of the children. He states this in his brief in several ways and also espoused that position at the time of oral submission. As part of this argument he

insists the trial court failed to give proper consideration to this factor—Diane's moral transgressions—in awarding custody.

██ There are no new or novel legal principles involved. As is true in most custodial fights, the questions presented are largely factual. Of course, in determining custody, the controlling consideration is the best interests of the child. Rule 344(f)(15), Rules of Civil Procedure. While our no-fault divorce law removes any issue of misconduct in determining most questions arising in dissolution cases (In re Marriage of Williams, Iowa, 199 N.W.2d 339, 345), the conduct of the parties is still material in deciding the always troublesome matter of child custody. As we have frequently said, there is no really satisfactory solution to this dilemma. In re Marriage of Bare, 203 N.W.2d 551, 552 (Iowa 1973).

Since William asserts moral unfitness as the only reason Diane should not have the children, we limit our discussion accordingly. Although several other complaints serve to muddy up the waters, William's accusations center almost entirely around Diane's relationship with one Terry Jackson. Our task is to decide if this disqualifies her from being a proper custodian for her children.

██ The evidence shows Terry Jackson was staying overnight with Diane three or four nights a week. They frequently slept together, and it is only slight exaggeration to say his principal place of resident was at Diane's home. Nevertheless, Diane and Terry Jackson deny sexual intercourse ever occurred between them. We are not required to be so naive as to accept this testimony, and we do not do so. We referred to the "limit of judicial credulity" in Levick v. Levick, 261 Iowa 345, 349, 154 N.W.2d 102, 104 (1967). That limit has been reached here, too, and our discussion of this matter assumes Diane was maintaining an adulterous relationship with Terry Jackson. Does this require a reversal of the provision as to custody?

Assuredly this misconduct is a factor to be considered; but it is not the *only* factor. Similar issues have been before us on numerous occasions and it is difficult to reconcile all of our pronouncements on the significance to be given moral misconduct. However, if these past decisions teach us anything, it is that each case must be decided on its own peculiar facts—all of them—and that other cases under other circumstances are of small help in reaching a decision. Conkling v. Conkling, 185 N.W.2d 777, 784 (Iowa 1971); Jones v. Jones, 175 N.W.2d 389, 391, 392 (Iowa 1970); Lovett v. Lovett, 164 N.W.2d 793, 802 (Iowa 1969); Utter v. Utter, 261 Iowa 683, 687–688, 155 N.W.2d 419, 422 (1968); Fritz v. Fritz, 260 Iowa 409, 418, 148 N.W.2d 392, 398 (1967) and Wendel v. Wendel, 252 Iowa 1122, 1126, 109 N.W.2d 432, 434 (1961). See also 20 Drake L.Rev. 383 (1971).

██ The overall effect of these decisions is to formulate a rule that moral misconduct is a circumstance to be given serious consideration in determining a parent's fitness to have custody of minor children. Other factors include the age and sex of the child, the environment in which the child shall live, the other characteristics of the one seeking custody, the ability to provide for the material, social, moral and emotional needs of the child, and whatever other matters the evidence in a particular case may disclose. In addition, of course, there is always the vexing problem of available alternatives.

Relating these general principles to the controversy now before us, we conclude without enthusiasm that the trial court should be affirmed. We do so for several reasons. In the first place the trial court has always been accorded considerable discretion in matters of this kind and we should reverse only when that discretion has been abused, even though we must still review the case de novo. Harwell v. Harwell, 253 Iowa 413, 420, 112 N.W.2d 868, 873 (1962); Wendel v. Wendel, 252 Iowa

1122, 1126, 109 N.W.2d 432, 434 (1961). There was no abuse of discretion here.

In that regard we set out the following portion of the trial court's findings:

"The children of the parties are healthy and well cared for, and have apparently thrived while in the custody of the respondent [Diane]. The school records for the oldest child, Christopher, indicate that he has done reasonably well in school since starting and that his progress has continued to be on the same level after the separation of the parties as it was prior to their separation. That as between the parties, the respondent has the capacity to provide more love, affection and kindness to the children than the petitioner [William]. The recommendations of the attorney for the children [who was appointed by the court to represent them independently] are not considered as evidence, nor are they binding on the court. However, the court notes that the attorney felt it was in the best interests of the children to place them with their mother."

We believe this is borne out by the record and is entitled to consideration as a circumstance favoring affirmance. See Conkling v. Conkling, supra, 185 N.W.2d at page 782.

Something else which makes it unwise to reverse the trial court is the absence of any satisfactory showing as to how William would care for the children if they were in his custody. We should not be compelled to speculate on such matters nor should we assume his plans—unformed or, at least, undisclosed—would be for the best interest of the children. We are persuaded the trial court made the correct choice under the record before us.

One other aspect of the case has caused us grave concern. As already noted, we cannot accept Diane's testimony about her liaison with Terry Jackson. This means we believe she testified falsely. We have taken this into consideration in reaching our decision. We reiterate what we said in Utter v. Utter, supra, 261 Iowa 683, 688, 155 N.W.2d 419, 422, about how this "apparent disregard for truthfulness and the sanctity of an oath" reflects adversely on her custodial fitness. It has weighed heavily against her in this case.

However, we must still balance that against the best long-run prospects of the children. On the whole record we hold the judgment placing them in the custody of their mother should be affirmed.

Respondent has requested an allowance of $355.37 for attorney fees and expenses incurred in this appeal. It is hereby ordered that such amount be assessed against petitioner as part of the costs.

Affirmed.