Elaine Artis STOUWIE, Appellant,

v.

Kenneth John STOUWIE, Appellee.

No. 2–56651.

Supreme Court of Iowa.

Oct. 16, 1974.

**436**

Elgin & Hoyman, Indianola, for appellant.

Bert A. Bandstra, Knoxville, for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ.

REYNOLDSON, Justice.

At issue is custody of two children, Michelle Sue, born July 12, 1967, and Tammy Lynn, born September 27, 1968. They are children of Kenneth Stouwie and Elaine Stouwie Funk, parties to this litigation. In a divorce modification proceeding, Mahaska district court granted Kenneth's petition to transfer custody to him. Elaine appeals and we affirm.

Kenneth and Elaine were married January 29, 1966. When they were divorced May 1, 1969 custody was granted to Elaine pursuant to stipulation.

During the pre-divorce separation of these parties Kenneth began going with his present wife, Kristy. He married her on the day the divorce became final. Kristy then had custody of two children, issue of the first of her two prior marriages. Kenneth adopted these children. Another child has been born of his marriage to Kristy.

Kenneth and Kristy have moved four times during their marriage and he has changed employment three times. However, at time of trial Kenneth had held the same job for about two and one half years

with Wausau Homes, Inc., at an annual salary of $12,300. For approximately the same period Kenneth, Kristy and the children had been living in an attractive 22 room rented house on a six acre tract in the country. Kenneth owned equities in a home and a commercial property in Ottumwa, Iowa. At time of trial Kenneth was 28 and Kristy 29.

Elaine's life was unsettled following the divorce. She also moved and changed employment several times. Usually she worked as a waitress-cook or in a factory. She had a short-lived marriage to Robert Evans which lasted from February 14, 1970 until July of the same year, at which time she left him. In January 1972 she left the state for two months, traveling to Kentucky and Michigan with a construction worker.

In December of 1972 Elaine's marriage to Evans was legally terminated and in the same month she married Curtis Funk, who had been twice previously married. Curtis is an over-the-road truck driver who earns approximately $18,000 annually. At trial time Elaine was 25, Curtis was 43, and his daughter by his first marriage, who lived with them, was 19. They reside in an apartment in Knoxville, Iowa, but Elaine and Curtis testified if they obtained custody of Michelle and Tammy they would move to a home owned by Curtis near Des Moines.

Although the May 1969 divorce decree granted custody of these two children to Elaine, Kenneth and Kristy have had de facto custody for most of the time since that date. Elaine kept the children about 90 percent of the time until December 1969. From then until she married Evans in February 1970 she allowed the Stouwies to have the children "most of the time," apparently because she was working. While Elaine was living with Evans, Kenneth and Kristy kept Michelle and Tammy and she saw them only on visits. Elaine suggested this arrangement because the girls made Evans nervous and she feared for their safety.

Elaine asked for return of the children in August 1970, following her separation from Evans. Kenneth refused and filed a petition for modification on August 18, 1970. The same day an ex parte order was issued granting Kenneth temporary custody of Michelle and Tammy. He has retained custody since that date. Elaine has exercised visitation rights.

The modification matter finally went to trial on July 17, 1973. The reason for this delay is disputed. Kenneth claims Elaine was stalling because she realized she was in no position to keep the children. Elaine blames her then (not present) counsel, whom she asserts told her she could not bring the matter on for trial because she was not petitioner in the proceeding. Her initial counsel did enter an appearance and filed answer. He also filed a motion to dissolve the ex parte custodial order, which motion was never set for hearing. The record is clear the delay was not attributable to Kenneth or his counsel.

Substantial evidence was submitted concerning the parties' qualities as parents. Elaine and several other witnesses testified the Stouwies had provided excellent care for the children. No one disputed the record disclosing the Stouwies as a loving family providing their children a good home, religious training and education.

It was also uncontested that at time of trial Elaine and Curtis Funk had created a good home atmosphere for the children on visitations. The Funk's affection for Michelle and Tammy is reciprocated.

Evidence was introduced indicating at an earlier time Elaine failed to care for the children properly. Kenneth testified without objection several ladies who baby-sat for the children or visited Elaine's home when she had Michelle and Tammy expressed their concern to him. There was evidence (contested by Elaine) the children were usually dirty when the Stouwies received them for visitation. While under Elaine's care both children developed a rash which seems to be conceded was caused by nerves. Kenneth took them to a doctor for this condition. They also had a condition caused from dirty diapers. One child may have suffered anemia.

Throughout the period following dissolution, liberal visitations were allowed by each party having custody. Commendably, there is no hint either party has attempted to alienate the children from the other.

Trial court found there was a substantial and material change of circumstances at the time Kenneth filed the petition for modification, noting the unsettled nature of Elaine's personal life and her difficulty in her second marriage. Kenneth and Kristy were then taking good care of the children. Trial court additionally considered the circumstance that the Stouwies had continued to care for the children up to time of trial, and concluded it would be unwise to uproot them from a home in which they had thrived to place them in an untested situation. Kenneth was awarded permanent custody. Elaine was granted generous, specific visitation rights.

Elaine, appealing, asserts no substantial and material change of circumstances had occurred when the modification petition was filed August 18, 1970. She additionally contends the continued presence of the children in the Stouwie home for three years following that date, on the strength of an ex parte order, should not be considered evidence of a material change in circumstances.

I. Several rules which govern our deliberations in cases of this nature have been recently and succinctly summarized:

"Our review is de novo. Although we are not bound by trial court findings we give them weight. The status of children should be quickly fixed and, thereafter, little disturbed. Siblings should not usually be separated. No hard and fast rule governs which parent should have custody. It is not a matter of reward or punishment. The issue is ultimately decided by determining under the whole record which parent can minister more

effectively to the long-range best interests of the children."—In re Marriage of Bowen, 219 N.W.2d 683, 687–88 (Iowa 1974).

In the same decision, 219 N.W.2d at 688, we abandoned the inference that the best interests of younger children are served by placing them in their mother's custody.

■ II. It is true that at one point in trial court's decision its findings of materially changed circumstances were confined to those apparent when the petition for modification was filed. Although ordinarily one expecting to introduce evidence of conditions occurring subsequent to commencement of litigation would file a supplemental pleading (rule 90, Rules of Civil Procedure) or an amendment (rule 88, R.C. P.), failure to take those procedural steps would not, in our view, prevent the court from considering all relevant facts to point of trial in a child custody case. With the future of children at stake, the court cannot permit trial delay to confine it to a replay of a situation existing three years before.

Aside from that major consideration, we note no objection was made to questions eliciting facts after the petition was filed. Elaine also relied on certain such post-petition evidence, including her current marriage and her present capacity to provide a home for Michelle and Tammy.

■ Nonetheless, we believe trial court rightly found a material change of circumstances had occurred, both at time of filing the petition and at trial time.

We have already set out many of the relevant facts. Kenneth visited the children weekly when Elaine had them in her home. Uncontradicted evidence shows Elaine gave de facto custody of the children to Kenneth for substantial periods of time prior to her remarriage. She chose to live with Evans, her second husband, for four months knowing she would have to leave the children with Kenneth during that interval.

During this period prior to the filing of the petition as well as afterward, it was the Stouwies who provided the stability the children required. Following filing of the petition and prior to her third marriage Elaine visited them only irregularly. She spent two months out of state pursuing an adulterous relationship with a married male companion.

By trial time these children had been nurtured and loved in the Stouwie home for three years.

■ As we have already noted, we have been guided in these cases by the concept that custody should be quickly fixed and little disturbed. In re Marriage of Bowen, supra at 687; Jacobs v. Jacobs, 216 N.W.2d 312, 314 (Iowa 1974). The court should avoid further disruption of the children's lives unless mandated by the circumstances. See Raabe v. Raabe, 191 N.W.2d 551, 553 (Iowa 1971).

We agree with trial court's determination these children should not be removed from what is conceded to be a good home to one which is untested.

III. Elaine's contention that we should not consider the three years Michelle and Tammy were in the Stouwie home pursuant to an illegal ex parte order appeals to a sense of fairness.

It is true we later held the type of order made here was illegal and void for lack of proper notice and hearing. Swift v. Leary, 185 N.W.2d 816 (Iowa 1971).

But there was no apparent effort by Elaine's then counsel to bring to hearing her motion to dissolve the order, or to try the petition for permanent custody. Neither did Elaine seek a writ of certiorari in this court.

Such litigation delays have been noted before in our opinions. In Miller v. Miller, 202 N.W.2d 105, 113 (Iowa 1972) we said:

"One who expects to argue a change is imperative for the welfare of the children does nothing to enhance one's cause by allowing months or years to slip by with-

out serious effort to expedite the appeal. In close cases—and most of them are—long delay may well tip the scales against uprooting children a second time."

And in Raabe v. Raabe, 191 N.W.2d 551, 553 (Iowa 1971) we suggested a permissible inference:

"Plaintiff's counsel neither applied for a stay order from this court nor pressed this appeal to a speedy conclusion. Under these circumstances we entertain a question of how anxious the father actually is to have the responsibility of this child."

Of course, Elaine testified her attorney during those years misinformed her about the law. It seems evident, however, that at no time prior to her marriage to Curtis Funk in December 1972 did Elaine have a stable environment within which to receive the children. The month following that marriage she retained other counsel. She also started visitations on a more regular basis.

■ Elaine's argument we must ignore the three years these children were with the Stouwies under the illegal order would be persuasive, and perhaps controlling, if we were merely adjudicating parental rights. But the paramount issue must be the children's welfare. They are the only persons involved in this controversy who are wholly blameless. See In re Marriage of Bowen, supra, 219 N.W.2d at 688.

These three—now four—years for Michelle and Tammy include most of their respective lives. There is no way we can excise and discard their experiences over that interval.

These children have been and are now in a good home. Both these parties and their spouses love them, and, we believe, will continue cooperating to shelter the girls from further trauma. What we said in Eddards v. Suhr, 193 N.W.2d 113, 117 (Iowa 1971) applies with equal force here:

"We decline to take the children from an environment which we *know* worked

to their advantage in favor of one where their experience may—or may not—be the same. We refuse to subject them to that risk."

The decision of the district court is affirmed.

Affirmed.