In re the MARRIAGE OF Leroy John George and Darlene Gertrude GUTERMUTH.

Upon the Petition of Leroy John George GUTERMUTH, Appellant,

and concerning

Darlene Gertrude GUTERMUTH, Appellee.

No. 3–58840.

Supreme Court of Iowa.

Oct. 20, 1976.

Ed Skinner of Irish, Skinner & Wieslander, Altoona, for appellant.

Nolden Gentry of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

The petitioner-father appeals from that portion of a district court ruling denying his petition for modification of a dissolution decree granting custody of two children to their mother, the respondent. We affirm.

These parties were married June 24, 1961. A son, David, was born September 24, 1963. Daughter Beth Ann was born April 1, 1970.

June 12, 1973 petitioner-father instituted a dissolution action. December 27, 1973 the parties stipulated a property settlement and agreed respondent-mother should have custody of the children. On the same date district court issued its decree dissolving the marriage and incorporating the stipulation provisions relative to child custody, alimony, child support and property division. Petitioner was granted visitation rights every other weekend, every other holiday and two weeks every summer.

January 17, 1975 petitioner filed application to modify the dissolution decree to provide him custody of the children. Respondent demanded decreased visitation and increased child support.

June 17, 1975 trial court ruled there was no substantial change in circumstances requiring a custody modification. The only change noted was petitioner's remarriage, his second wife bringing her two minor children into their home. The court found petitioner had difficulty in confining his role to that of a parent with visitation rights only. The court placed tighter limits on visitation and granted a small increase in child support. Respondent was ordered not to permanently remove the children from Polk County without prior court approval following hearing. Petitioner did not appeal this modification.

August 20, 1975 respondent-mother filed this application to modify the supplemental decree to permit her to take the children from Polk County so that she could accept teaching employment at Storm Lake. Petitioner-father resisted the application and cross-petitioned for custody change. Trial court granted respondent's application for permission to remove the children from Polk County, further limited visitations, and denied petitioner's application for change of custody.

Appealing, petitioner presents three "propositions": trial court "erred" 1) in failing to find that "disregard for truthfulness and the sanctity of an oath reflects adversely on custodial fitness", 2) in failing to find that "mother's conduct in depriving the children of their right to see and know

their father is a most serious reflection on her capacity to retain custody" and 3) in its finding "the Child Guidance Center was involved prior to the hearing."

Respondent denies these propositions and invokes our rule that a parent seeking to take actual custody from another has the burden of showing some superior claim based on his ability to minister, not equally, but more effectively to the child's well being.

■ I. Although appellant's brief is couched in terms of trial court "error", our review is de novo. *In re Marriage of Morton*, 244 N.W.2d 819, 821 (Iowa 1976); *In re Marriage of Moorhead*, 224 N.W.2d 242, 244 (Iowa 1974). The sole issue here is the best interests of the children. Rule 344(f)(15), Rules of Civil Procedure. We will consider the factors petitioner includes in his propositions only as they might control, separately or together, the ultimate resolution of the single question before us.

■ The parent seeking to take actual custody from the other has the burden to show some superior claim based on his ability to minister, not equally, but more effectively to the children's well being. *In re Marriage of Powers*, 226 N.W.2d 810, 812 (Iowa 1975); *Spotts v. Spotts*, 197 N.W.2d 370, 371 (Iowa 1972). This principle is but a corollary to our rule that custody of children, once fixed, should seldom be disturbed and then only for the most cogent reasons. *Schoonover v. Schoonover*, 228 N.W.2d 31, 34 (Iowa 1975); *Stouwie v. Stouwie*, 222 N.W.2d 435, 438 (Iowa 1974).

II. The record reflects each party is able to provide for the material and social needs of the children. Each would provide for religious guidance. Both have feasible plans for others to care for the children during working hours.

These parties love David and Beth Ann. The basic problem, now pinpointed in two modification hearings and noted in two supplemental decrees, is their inability to insulate from the children their mutual animosity and hatred.

Petitioner remarried July 26, 1974 and selected a residence five or six blocks from his former home, occupied by respondent. His present wife has custody of two children by a prior marriage, David, age 9, and Deborah, age 12.

Petitioner's proximity and concern resulted in his inability to resist taking a heavy role in the day-to-day activities of his children. The hostile encounters between the parties placed emotional stress on David and Beth Ann. This was confirmed by Dr. Paul Holzworth, who once treated David for an upset stomach (duodenitus) he attributed to tension.

After his first petition for custody modification was rejected in the June 17, 1975 supplemental decree, petitioner, for whatever motives, apparently moderated his statements in conversations with respondent. Some of his conduct, however, seemed designed to raise the confrontation level. At the same time, he made careful documentation and secret taped recordings of respondent's angry verbal onslaughts in controversies concerning the children. Respondent denied many of these statements in a discovery deposition, but acknowledged them at trial, explaining "[n]ow I have heard the tape."

■ Petitioner contends respondent's demonstrated disregard for truth and the sanctity of an oath reflects adversely on her custodial fitness, citing *In re Marriage of Dawson*, 214 N.W.2d 131, 133 (Iowa 1974) and *Utter v. Utter*, 261 Iowa 683, 688, 155 N.W.2d 419, 422 (1968). We agree with this assertion, although such conduct, while a factor entitled to heavy weight, see *Crary v. Curtis*, 199 N.W.2d 319, 321 (Iowa 1972), is not necessarily controlling as demonstrated by the holdings in the cases petitioner cites.

■ The most charitable characterization of respondent's testimony is that she may have forgotten some of those statements made in extreme anger. But we do not condone her untruthfulness on deposition and have given it serious consideration in our disposition of this appeal. Other fac-

tors, some of which are mentioned, infra, combined with our established rule that· we do not award custody to punish or reward, *Hagen v. Hagen,* 226 N.W.2d 13, 15 (Iowa 1975), persuade us to affirm trial court.

Petitioner asserts another serious reflection on respondent's capacity to have custody is her conduct in "depriving the children of their right to see and know their father" by accepting employment at Storm Lake, citing *Spotts v. Spotts,* supra.

In the summer of 1975 respondent completed her requirements for a B.A. degree at Drake University and sought a teaching position. Although she made applications in the Des Moines area we are inclined to agree with petitioner she was not as aggressive as a tight job market demanded. She applied and obtained a teaching position at Storm Lake and made application to move the children to a good home she purchased there.

Despite trial court's finding that respondent made a reasonable effort to obtain employment in the Des Moines community, we conclude her failure to quickly pursue one opportunity was probably motivated by a desire to put some distance between her and the petitioner, to diminish tension and controversies and insulate the children from potential emotional harm. This situation is distinguishable from that in *Spotts v. Spotts,* supra, where the mother moved without notice to the father who for months did not know where his children were.

Finally, petitioner claims trial court's disposition was in partial reliance on the erroneous assumption the first supplemental decree was based on a Child Guidance Center report. Respondent concedes there was no such report. In its findings, trial court merely mentioned, referring to a time before the *first* supplemental decree on June 13, 1975, "[t]he court file reveals the Child Guidance Center was involved prior to the hearing". There had been an order, subsequently withdrawn, for an independent study by that agency. We do not share petitioner's concern in this regard and in

any event review this record de novo without reliance on a nonexistent report.

 III. We are impressed, as apparently was trial court, by the testimony of the family physician, Dr. Holzworth. He had treated both parties and the children at various times. It was his opinion that if the hostility between the parties still remained it would be in the best interest of the children to remove them from the local situation to Storm Lake. He did not think the move would be harmful. It was his opinion respondent's activity in completing her education and carving out a new and more interesting career would make her a happier person and a much better mother.

Also testifying was William Cropp of Polk County Mental Health Center. He held a master of arts degree in psychiatric social work from the University of Iowa and had years of experience in the field. His acquaintance with these parties in a professional capacity started in 1969. He found them "locked in a very destructive kind of relationship" which did a "real disservice to the children" and persisted beyond the termination of their marriage. It was his opinion permitting the children to move to Storm Lake with their mother would help their situation, giving them an opportunity "to be away from that kind of continuous struggle that goes on for the loyalty of the children" and avoiding their being "caught up in reporting what is going on." On the issue of custody change he felt it ' might be difficult for the Gutermuth children to mesh into a new family situation with the stepmother's two children of comparable age.

Trial court limited the children's visits to petitioner's Des Moines home to one per month. On one other weekend per month petitioner (a salesman) was permitted visitation in Storm Lake. David and Beth Ann will not be without their father's companionship. For a final time, we admonish respondent to cease making derogatory statements to or concerning petitioner in the presence of these children.

Although the case is very close, we are not persuaded we should interfere with tri-

al court's decision to leave the children with their mother who has cared for them for three years. If these parents are sincerely interested in the welfare of the children, they will put their hostilities aside and strive to provide a loving environment. *In re Marriage of Winter*, 223 N.W.2d 165, 168–169 (Iowa 1974). We affirm the decree entered below.

AFFIRMED.