In re the MARRIAGE OF Connie S. and Keith F. MELTON.

Upon the Petition of Connie S. MELTON, Appellant,

and concerning Keith F. MELTON, Appellee.

No. 2–60008.

Supreme Court of Iowa.

July 29, 1977.

Thomas D. Hanson, Blanchard, Cless & Hanson, Des Moines, for appellant.

David L. Phipps, Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, and Robert L. Horak, Reading, Pauley, Horak & Ostlund, Jefferson, for appellee.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

MOORE, Chief Justice.

In this dissolution modification proceeding, petitioner-mother appeals trial court's order denying her application to transfer custody of the minor son to her and granting respondent-father's counterclaim for modification of visitation rights. We affirm.

Petitioner (Connie) asserts trial court erred (1) when it failed to change custody where respondent (Keith) allegedly initially procured custody under the dissolution decree through fraud and (2) in finding there had been no material change of circumstances sufficient to warrant change of custody.

The parties were married September 7, 1965. September 12, 1969 their child Bryan was born. In December 1973 the parties separated, Connie moving to an apartment in Jefferson with her son Bryan. She filed a petition for dissolution in January 1974.

While the matter was pending Keith, in August 1974, picked Bryan up on a weekend visitation and later called Connie and said he was out of the state with Bryan and that she would never see the child again unless she agreed to give him custody. Neither party had been granted temporary custody. Keith admitted at the later modification hearing he had taken the child to Baltimore, Maryland and Tampa, Florida before returning to Iowa when Connie agreed to his terms.

Thereafter the dissolution action ran its course with the decree finally being entered on September 23, 1974. The decree incorporated a stipulation previously entered which distributed almost all of the property and financial assets of the parties to Connie; however custody of Bryan was awarded to Keith subject to Connie's reasonable visitation rights. The stipulation and decree were prepared by Connie's attorney. As to custody the decree specifically provided:

"1. That the Respondent shall have custody of the minor child herein, Bryan Keith Melton, subject to right of visitation by the Petitioner as follows:

"a. In the event Respondent and minor child reside within one hundred (100) miles of residence of Petitioner, the first and third weekends of each month from Saturday a.m. to Sunday p.m.

"b. In the event Respondent and minor child reside from 100 to 400 miles of residence of Petitioner on the first weekend of each month from Saturday a.m. to Sunday p.m.

"c. In the event Respondent and minor child live from 400 to 800 miles within residence of Petitioner the first weekend every other month from Saturday a.m. to Sunday p.m.

"Notwithstanding the above and foregoing, the parties may make oth-

er arrangements for visitation as they mutually agree; also, notwithstanding the above and foregoing, the Petitioner shall have the right of visitation with the minor child once during each major holiday period, and also on or about the date of his birthday. Respondent shall bear and pay the cost of transportation and deliver said minor child to Petitioner for visitation."

Connie later admitted she was not forced to sign the stipulation. At the modification hearing Gerald Magee, Connie's attorney at the time the stipulation was entered, testified it was contemplated Bryan would be living outside the State of Iowa and also that he fully explained to Connie her legal rights and alternatives before she agreed to grant custody to Keith.

After entry of the decree, Keith and Bryan became residents of Nebraska where Keith secured employment as a pilot. He attempted to comply with the visitation provisions of the decree by bringing Bryan back to Iowa the first weekend of each month and on all major holidays. Subsequently both parties remarried.

In April, 1975, shortly before Connie was remarried, the parties were involved in an altercation regarding whether Bryan would attend the ceremony which he ultimately did.

In October 1975 an incident occurred which really was the catalyst for the present litigation. During visitation Keith was involved in a shoving and swearing match with Connie's second husband in the presence of Bryan. Thereafter because of his concern for the effects of this behavior on his son, Keith refused to return for the scheduled visitations through April 1976 with the exception of Christmas 1975. As evidenced throughout the record the constant visitation travels and attendant emotional scenes had a negative effect on Bryan and he developed emotional and behavioral problems as a result.

When Keith failed to return with Bryan in November 1975 Connie filed an application for an order for rule to show cause why he should not be cited for contempt. When he did not bring Bryan in February and March this application was amended to so reflect further noncompliance with the decree. After two special appearances were overruled, Keith finally appeared, and the court entered an order finding the parties had agreed to try and re-establish visitation and thus not holding Keith in contempt.

Contemporaneously with these matters on April 12, 1976 Connie filed an application to modify the custody provision of the decree. In Division I she alleged fraud in procurement of the original decree, and in Divisions II and III she alleged substantial and material change of circumstances necessitating transfer of Bryan to her.

At this point the procedural matters were complicated still further when on June 15, 1976 an ex parte default order changing custody was entered after Keith's special appearance was, in effect, overruled. Subsequently Connie obtained custody of Bryan—but only temporarily. After Keith filed a motion to vacate the default the court set that order aside on June 25, 1976. Custody was subsequently returned to Keith after he filed a habeas corpus action.

This was the status of the proceedings when the hearing on Connie's application to modify was finally heard on the merits in September 1976. After the commencement of the hearing, Connie sought to sever Division I of petition and have the fraud action tried separately in an equitable proceeding. Trial court overruled the motion but thereafter received most of the evidence relating to the circumstances surrounding entry of the original decree and the stipulation incorporated therein including the alleged "extrinsic fraud and duress" issues.

The evidence received at trial indicated both parents, when separated and living with their new spouses and children, are capable of providing good homes for Bryan. Connie's second husband farms over 600 acres of crop land in Greene County and also raises livestock. Apparently he has established a good relationship with Bryan. Keith, while having held several jobs as a

pilot since moving to Nebraska is nonetheless able to secure good employment and provide a comfortable three-bedroom home for Bryan and his two stepsons. There was evidence the family situation is good. Bryan has fit well in this environment.

However, it is uncontradicted the boy has been emotionally disturbed by the custody fight between his parents. In particular the April and October incidents were damaging. There is evidence of an apparent "kidnapping incident" when he was visiting with his mother in June 1976. There is evidence Bryan has developed discipline problems at home and at school and has problems with hyperactivity and is unable to play effectively with other children.

Mrs. Nancy Gross, a child therapist with the Mid-Nebraska Mental Health Center in Grand Island, Nebraska, testified she had worked with Bryan on 18 separate visits at the Clinic and opined that his behavioral problems were closely linked with his visits to his natural mother. She expressed the opinion his upset and instability created by change in the home environment and his anxiety would be lessened by less frequent visits with his mother.

Mrs. Kay Owens, the Director of the Mid-Nebraska Clinic, testified much of Bryan's uncertainty was enhanced by his simply not knowing what was going to happen to him. The uncertainty was increased with each visit to his natural mother. She opined:

"I would be more comfortable with a visitation arrangement in which there were not such frequent disruptions and changes in his life. Perhaps rearranging visitations so that they could be less frequently but for longer durations of time."

In its decree trial court found Connie had not carried her burden to prove a substantial and material change of circumstances not contemplated by the parties since the dissolution decree was entered. Furthermore it modified the visitation provisions of the original decree, as Keith had prayed in his counterclaim, as follows:

"The Petitioner shall have a right of visitation for a period of three weeks during the month of August of each year, the specific weeks to be agreed upon between the parties herein; and in the event that they cannot agree, then the period of visitation shall commence with the hour of 10:00 a.m. on the first Saturday of August and shall continue until 1:00 p.m. on the fourth Sunday thereafter.

"The Petitioner shall also have a right of visitation for a period of one week during the Christmas holiday. This period also is to be agreed upon between the parties herein, but in the event that they are unable to agree upon a reasonable period of visitation, this Court will retain jurisdiction of the matter for the entry of further Orders concerning this matter.

"The Petitioner shall further have a right of visitation with her son either during the Easter holiday or the Thanksgiving holiday each year. This visitation is to alternate each year between Easter and Thanksgiving, and the right of visitation shall constitute a portion of Bryan's school vacation equalling approximately half of the vacation. That is, if Bryan has a week vacation from school, this visitation would cover a period of approximately three and a half days. If, on the other hand, the vacation period is only four days, then the period of visitation would only amount to two days. The visitation during the year 1976 shall be at Thanksgiving and shall alternate each year thereafter.

"The Petitioner shall further have a right to visit with the minor child at reasonable times and places if she be in the locality of the child's home area so long as the visitations do not disrupt the child's scheduled or normal activity. This is to be upon reasonable notice to the respondent so that he can make the child available to the Petitioner. The Court is aware of the fact that there are many other holidays throughout the year, and it is the thought and intention of this Court that the parties foster a friendly relationship between the child and the other parent at all times. And when the Respondent has occasion to return to Iowa and

nearby communities for visits to his own family, that he will grant the Petitioner visitation with the child, and likewise the child a right of visitation with his natural mother.

"IT IS THE FURTHER ORDER OF THIS COURT that the Decree as heretofore entered shall be modified as to the requirement of transportation in the matters of these visitation rights. The Court feels that the costs of transporting the child between the home of the Petitioner and Respondent should equally be shared between the Petitioner and the Respondent unless the Respondent is already making a trip to the State of Iowa to visit his own family. In that event, the Court then would expect the Respondent to pay the costs of that transportation. If, however, the trip is made solely for the purpose of returning the child to the State of Iowa for the purpose of a visitation, then the Court would expect the parties to mutually agree upon the transportation of the child and to share the expense and the mode of transportation."

I. Principles governing appeals of this type are well established; it is their application which causes the court difficulties.

■ Our scope of review is de novo. *Hobson v. Hobson,* Iowa, 248 N.W.2d 137, 139; *In Re Marriage of Gutermuth,* Iowa, 246 N.W.2d 272, 274. We give weight to the fact findings of the trial court but will not abdicate our duty to review de novo and determine issues presented upon the facts disclosed of record. Rule 344(f) 7, Rules of Civil Procedure; *Hobson v. Hobson, supra; In Re Marriage of Morton,* Iowa, 244 N.W.2d 819, 821.

■ The first and governing consideration is the best interests of the child. Rule 344(f) 15, R.C.P. Connie as the noncustodial parent has the burden of establishing by a preponderance of the evidence that conditions since the court decree have so materially and substantially changed that the child's best interests make it expedient to award his custody to her. *Hobson v. Hobson, supra; Zaerr v. Zaerr,* Iowa, 222 N.W.2d 476, 477. As the parent seeking to take actual custody from the other she must show some superior claim based on her ability to minister not equally but more effectively to the child's well being. *In Re Marriage of Gutermuth, supra,* 246 N.W.2d at 274; *In Re Marriage of Powers,* Iowa, 226 N.W.2d 810, 812. This is a recognition of our settled principle that once custody is fixed it should seldom be disturbed and only then for the most cogent reasons. *Schoonover v. Schoonover,* Iowa, 228 N.W.2d 31, 34; *Stouwie v. Stouwie,* Iowa, 222 N.W.2d 435, 438; *In Re Marriage of Bowen,* Iowa, 219 N.W.2d 683, 687.

■ A change of circumstances within the intent of this rule must be such as were not within the contemplation of the parties when the former decree was entered. *Hobson v. Hobson, supra,* 248 N.W.2d at 139, 140; *Black v. Black,* Iowa, 203 N.W.2d 121, 124. In this regard we have said remarriage of one or both divorced parents may or may not be sufficient to require a change of custody. *Spotts v. Spotts,* Iowa, 197 N.W.2d 370, 371; *Eddards v. Suhr,* Iowa, 193 N.W.2d 113, 116. The changes must be more or less permanent or continuous, not merely transitory, variable or temporary and where, as here, a change of financial condition of one or both of the parties is relied upon as a basis for modification it must be substantial. *Alex v. Alex,* Iowa, 161 N.W.2d 192, 195; *Pucci v. Pucci,* 259 Iowa 427, 433, 143 N.W.2d 353, 357; *Simpkins v. Simpkins,* 258 Iowa 87, 90, 137 N.W.2d 621, 623. Of course, each custody case must ultimately turn on its own peculiar facts.

■ II. With these considerations in mind we first address Connie's claim the trial court erred in not considering her contention the custody provisions of the original decree were obtained through extrinsic fraud. As she states in her brief we have held a decree and judgment may be vitiated where obtained through extrinsic, not intrinsic, fraud. *Gigilos v. Stavropoulos,* Iowa, 204 N.W.2d 619, 621; *Peterson v. Eitzen,* Iowa, 173 N.W.2d 848, 850; *Butler v. Butler,* 253 Iowa 1084, 1112, 1113, 114 N.W.2d 595, 611.

Trial court correctly denied a change of custody on this ground for two reasons. First, the fraud alleged here (duress in signing the stipulation) is intrinsic fraud because it inheres in the issues originally submitted to and decided by the trial court when the decree was entered. That being the case, it gives no basis for relief. *Stearns v. Stearns,* Iowa, 187 N.W.2d 733, 735 and citations.

Second, we note it was Connie who initiated the prior dissolution proceeding and who, represented by counsel, drafted the stipulation later incorporated into the decree granting custody to Keith with provision for her liberal visitation rights and awarding to her most of the financial or physical assets of the parties. Particularly relevant to this issue is the following statement in *Crary v. Curtis,* Iowa, 199 N.W.2d 319, 321, (quoting *Simpkins v. Simpkins,* 256 Iowa 989, 992, 993, 129 N.W.2d 723, 725):

> " 'Some contention is made by the plaintiff that she was induced to sign the stipulation by threats of offered evidence of misconduct on her part if the case should go to trial. There is no pleading of duress, and the court made no finding of any. *We have pointed out that in any event the stipulation is not of importance here; it is not a matter of contract between the parties. We are considering an application to modify the court's decree. The plaintiff secured her divorce, with certain advantages; in the absence of material change in circumstances she must take its burdens also.'* " (Emphasis supplied).

Trial court did not err in refusing to grant Connie relief based on Division I of her application.

▮▮▮▮ III. Under Divisions II and III of her application Connie maintains there are three material changes in circumstances which have occurred since the entry of the original decree which entitled her to the requested change in custody. These are: (1) She is, through her marriage to Gary Dean Johnston, now in a substantially better economic position to care for the child than in 1974 when the dissolution was finalized; (2) her ex-husband, is now in a worse economic condition due to "unstable and egocentric work habits"; (3) her child, Bryan, has had "behavioral, discipline and emotional" problems since the dissolution.

Keith counters all these arguments but primarily stresses the following: (1) The major stresses working against Bryan's best interest have occurred when appellee returns the child to Iowa for visitation and then is subjected to violent demonstrations by Gary Dean Johnston, Connie's new husband; (2) his expert witnesses opined Bryan's behavioral problems were increased and intensified when he visited his natural mother because the frequent changes in his life made it uncertain what was ultimately to happen to him; (3) he is able to financially support Bryan plus his new wife and her two children by a prior marriage as evidenced by the fact he has provided his family with a comfortable three-bedroom home in the country in Nebraska.

Connie makes a strong case for modification based on the improper way appellee gained custody originally. This argument appeals to a sense of fairness because we surely cannot condone such conduct. While this might be persuasive and controlling if we were adjusting parental rights, the paramount issue is the child's welfare. However, as we noted in *Stouwie v. Stouwie, supra,* 222 N.W.2d at 438, 439, the failure to press an appeal of the custody issue to a speedy conclusion (the decree was entered September 23, 1974, no direct appeal was ever taken; the application to modify was not filed until April 12, 1976) raises some question as to how anxious a parent is to have responsibility of a child.

▮▮▮▮ IV. Our de novo review results in the conclusion we should not disturb the trial court's decision to leave Bryan with his father who has had custody for over two and one-half years. What is bothersome is the manner in which Keith originally obtained custody; what is equally bothersome is the emotional upheaval which accompanies each visitation in Iowa, much of it occasioned by Connie and her new hus-

band. On balance, it appears both parents are now capable of providing a good home for Bryan. We do not believe Connie sustained the heavy burden imposed on her to demonstrate a superior claim to custody. The trial court we think has tried to accommodate the best interests of Bryan by modifying the original decree to provide for less frequent visitations of longer duration. We believe this is a reasonable attempt to improve this unfortunate situation. If these parents are sincerely interested in the welfare of Bryan they will put their hostilities aside and strive to provide a loving environment.

We are satisfied the modification decree as entered is right under the circumstances.

AFFIRMED.