In re the MARRIAGE OF Denise Ann
MOORHEAD and Gary
Dwight Moorhead.

Upon the Petition of Denise Ann
MOORHEAD, Appellant,

and concerning

Gary Dwight MOORHEAD, Appellee.

No. 2–56769.

Supreme Court of Iowa.

Dec. 18, 1974.

Wells, Brubaker, de Silva & Gallagher, Davenport, for appellant.

A. Fred Berger, Jr., Davenport, for appellee.

Heard by MOORE, C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

REES, Justice.

This is an appeal by petitioner-wife from provisions of a trial court decree in an action for dissolution of marriage. Petitioner appeals from provisions of the decree granting respondent custody of two minor children, dividing marital property and assessing attorney's fees. We affirm the decree on the custody questions, and modify it otherwise.

I. Custody of two children is involved in this case: Thomas, born November 16, 1965, and Pamela, born February 23, 1968. The children lived with both parents in the family home on an acreage near Blue Grass in Scott County until about November 1, 1972, when they moved with the petitioner (hereinafter Denise) to Davenport. They remained with Denise in Davenport for some ten months until the respondent (hereinafter Gary) was granted custody in

the dissolution decree entered September 28, 1973 and now once again live in the home near Blue Grass with Gary.

Denise and Gary were married on July 25, 1964 and lived together until Denise departed from the home on November 1, 1972. The circumstances surrounding the breakdown of the marriage relationship are well documented in the record and trial transcript. All indications are the first five years of the marriage were relatively happy with the parties and their children engaged together in recreational activities and work about the home. It then appears Denise gradually became disenchanted with life in the country, almost completely circumscribed by her housekeeping duties and the care of her family, and as a result increasingly withdrawn from Gary. She characterized the problem as essentially one of personalities, Gary being quiet, reserved and basically home-oriented, and herself more outgoing and in need of social stimulation.

During the last two years before they separated, Denise and Gary both singly and together sought advice from relatives and professional help concerning their deteriorating marriage. During the same period, Denise began seeing one Terry Van Natta, a long-standing acquaintance of both herself and Gary, and who had in fact been the best man at their wedding. The precise nature of the relationship between Denise and Van Natta is not entirely clear from the testimony adduced at trial, although Gary testified Denise and Van Natta had both admitted to having committed adultery and no unequivocal denial of his testimony was forthcoming from Denise. Van Natta did not testify.

Denise filed her petition for dissolution in September, 1972. Shortly thereafter (around November 1, 1972) she moved to an apartment in Davenport, taking with her the children, various items of furniture and the family car, a 1966 Ford. There she secured employment as a bookkeeper with a business service, earning about $75 per week. The children attended school, Thomas, the second grade, and Pamela, kindergarten, with their care during Denise's working hours entrusted to neighbors and finally a full time babysitter. Denise testified that in her judgment the children adjusted satisfactorily to their new surroundings, but she was frank to concede the home near Blue Grass was cleaner and a nicer place to live. She contended whatever the Davenport surroundings lacked in "atmosphere" was compensated for by her love for her children.

During the pendency of the dissolution action, while Denise had custody of the children, Gary attempted to visit the children regularly. According to his testimony he attempted to see the children as many as two or three times a week, and some 59 times altogether during the period. He was turned away on all except eight occasions by either Denise or Van Natta. In July of 1973 he applied for and obtained a court order granting him visitation rights for two weeks during his August vacation. Apparently when Gary was permitted time with the children he spent it well, taking them on various visits and to Sunday school at the Lutheran Church. Denise had abandoned the practice of going to church or taking the children to Sunday school after moving to Davenport because she felt embarrassed returning to the church the family had attended when together.

Gary is an employee of Northwestern Bell Telephone Company, and earns approximately $12,000 a year. He was characterized by all of the witnesses at trial, including Denise, as a hardworking, upstanding man and good father. Gary signified his intention to maintain the family home near Blue Grass, and had made arrangements for the children to be cared for during non-school hours while he was absent from the home by an aunt who lives nearby. The aunt testified at trial and indicated she was satisfied with the arrangement and looked forward to caring for the children. Gary's parents also testified and expressed a willingness to assist in the care of the children.

Our review is de novo. Before passing on the custody determination reached by trial court, we have a duty to examine the whole record and adjudicate anew rights on the issues properly presented. In so doing, we give weight to the findings of the trial court but will not abdicate our responsibility to review the record de novo on appeal. In Re Marriage of Novak, 220 N.W.2d 592, 597 (Iowa 1974). As in all custody cases we must determine this case ultimately on its own facts. In Re Marriage of Jennerjohn, 203 N.W.2d 237, 240 (Iowa 1972).

The general principles applicable to the custody issue were listed in In Re Marriage of Winter, 223 N.W.2d 165 (Filed November 13, 1974), in which we made reference to our prior opinion in In Re Marriage of Bowen, 219 N.W.2d 683 (Iowa 1974). See also In Re Marriage of Dawson, 214 N.W.2d 131 (Iowa 1974); Jones v. Jones, 175 N.W.2d 389 (Iowa 1970), and Christensen v. Christensen, 191 Neb. 355, 215 N.W.2d 111 (1974). We need not elaborate on those principles here.

Our first and governing consideration must be the best interest of the children involved. Rule 344(f)(15), Rules of Civil Procedure; In Re Marriage of Dawson, 214 N.W.2d 131, 132 (Iowa 1974). In deciding this question, we seek neither to punish one parent, nor to reward the other. In Re Marriage of Bare, 203 N.W.2d 551, 554 (Iowa 1973). There is no inference in favor of one parent as opposed to the other being the more fit custodian except that arising from the peculiar facts of a case. In Re Marriage of Bowen, *supra*, 219 N.W.2d at 688.

■ The evidence elicited at trial and summarized above clearly demonstrates Gary is a responsible parent and a dependable provider of the material wherewithal and moral support the children will require in the coming years. The best interests of the children appear to be of major concern to him, and he seemingly possesses the ability to insure they are realized. He attaches some significance to the children's religious education and training and this factor we may properly consider. In Re Marriage of Carey, 211 N.W.2d 342, 345 (Iowa 1973).

By contrast, Denise, while doubtlessly concerned with the welfare of her children, seems somewhat less able to provide a stable atmosphere for their upbringing. She admits the transition from the relatively "low-key" life in the country to a more active one in the city has caused her to undergo a psychological change. We consider also her admitted relationship with Van Natta.

■ We conclude the trial court in fixing the custody of Thomas and Pamela with Gary gave due consideration to the children's best interests, and that such determination was adequately justified by the record. The provisions of the decree fixing custody in Gary and awarding visitation rights to Denise are affirmed.

II. When the dissolution decree was entered, the parties owned government bonds totaling $1000 in value, a $4000 account in the telephone credit union, a 1963 Ford truck, a 1966 Ford automobile, household furniture and sporting equipment, including a boat, motor and water skis, and an equity in their home near Blue Grass. The home had been purchased on contract in 1968 for $15,000, and it seems to be generally agreed that it had a market value of $30,000 at time of trial. A balance of between $5000 and $7000 remained unpaid on the purchase contract. Neither party brought property into the marriage and all of the above mentioned items were purchased out of Gary's earnings. It is apparent, however, the increase in value of the real estate resulted in part from Denise's endeavors. As noted hereinabove, at the time of trial Gary was earning approximately $12,000 per year with the telephone company, and Denise was earning about $75 per week from the business service by which she was employed.

By the terms of the decree, Denise was awarded the 1966 Ford and sufficient furniture to furnish her apartment. She was

awarded no alimony. Gary was awarded the family home, the truck, savings bonds, credit union account, remaining items of furniture and the sporting equipment. He was ordered to pay all obligations incurred by both parties prior to the date the decree was entered, and all future installments on the real estate contract. We find no reference in the record to any other outstanding obligations of the parties.

In determining a fair property distribution, we follow the guidelines laid down in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968), as modified in In Re Marriage of Williams, 199 N.W.2d 339 (Iowa 1972). Precedent is of little help to us, the determination of property rights being essentially a question of what is equitable.

 Obviously, the house in Blue Grass should be awarded to Gary in light of the fact he retains custody of the children and he will be required to make a home for them. The court divided the car, truck and household furnishings equitably, and we see no reason to disturb that distribution.

The marriage of the parties lasted about eight years. During that period Denise was occupied with her housekeeping and had, by dint of her efforts in assisting Gary, contributed to the enhancement in value of the real estate. In our considered judgment, Denise should have been awarded a greater share of the marital property. We deem $2500 to be a fair, just and equitable award to be made to her.

Trial courts are permitted considerable discretion in allowing attorney's fees and costs in dissolution actions. McNamara v. McNamara, 181 N.W.2d 206, 211 (Iowa 1970). In this case trial court ordered Gary to pay in advance of trial $150 as temporary attorney's fees to Denise's attorney. She now owes about $600 for legal services incurred at the trial level, and also is obligated to pay her attorney for services rendered in prosecuting this appeal. Petitioner's attorney has submitted an itemized statement for services rendered and expenses incurred in connection with this appeal. The statement indicates he has expended 41½ hours in connection with the preparation of the appendix, brief and oral argument.

We hold Gary should be ordered to pay $500 toward Denise's attorney's fees incurred at the trial level. He should also be ordered to pay $900 toward Denise's attorney's fees and expenses in connection with this appeal. Gary shall also be taxed with costs.

We affirm the provisions of the decree relating to custody and visitation rights. We modify those provisions of the decree dividing the marital property to permit an additional award of $2500 to Denise, and direct that costs and attorney's fees be reassessed as above detailed. This case is remanded for entry of a decree in accordance with this opinion.

Affirmed in part, modified in part, and remanded with directions.