Phyllis HAGEN, Appellee,

v.

Dennis HAGEN, Appellant.

No. 2–57488.

Supreme Court of Iowa.

Feb. 19, 1975.

Hutcheson & Lisles, Fort Madison, for appellant.

Daniel E. Cahill, Burlington, for appellee.

Submitted to MOORE, C. J., and MASON, LeGRAND, REES and REYNOLDSON, JJ.

REES, Justice.

This appeal is from the order, judgment and decree of trial court denying defendant's application to change custody of two minor children from plaintiff-mother to defendant-father. We affirm trial court.

Plaintiff Phyllis Hagen was divorced from defendant Dennis Hagen by decree dated January 8, 1969. Her petition had been on file since September 1, 1967. By the terms of the decree, Phyllis was awarded custody of the parties' two children, Patrick, age three and Denise, age two at date of decree. Dennis was given the right to have the children from 8:30 p. m. on Friday to 8:30 p. m. on Saturday of each week, two weeks each year during his vacation period, and every other legal holiday. Dennis was required to pay the sum of $80 per month for the support and maintenance of the children until they attained 18 years of age, married, died or became self-supporting.

In his application to modify the decree, filed March 25, 1974, Dennis asserted he had a superior ability to provide for the general welfare of the minor children, and asked that he be awarded the permanent care, custody and control of the children.

On April 23, 1974 Phyllis filed an application for modification of the decree in which she asserted the $80 per month allowance for the support of the two children was inadequate, that there had been substantial changes in circumstances since the entry of the decree in regard to the cost of raising the children and also with regard to the income of defendant. She asked that the decree be modified to increase the child support payments to an adequate level and to require defendant to pay all medical expenses of the children.

At the commencement of the hearing trial court announced it would consider all evidence presented insofar as same was applicable to both applications to modify. Counsel for both parties acquiesced in that arrangement.

Trial court found and decreed defendant had not shown sufficient justification for the court to change the custody of the children, and denied defendant's application to modify the decree. The record is silent as to any disposition of Phyllis' application to modify and increase the child support payments.

Defendant advances the following propositions which he contends necessitate reversal:

(1) Trial court abused its discretion in maintaining the prior custodial arrangement although the custodial parent was shown to have engaged in immoral acts in the presence of her children, and had borne an illegitimate child following her divorce.

(2) Trial court abused its discretion in denying custody to defendant, who the record shows earned over $14,400 per year, while the custodial parent was earning only $6,500 per year.

(3) Trial court abused its discretion in refusing to change custody when defendant contends it was established he could provide a superior environment for the children.

■ I. No unusual legal principles are involved here. We have on many occasions reiterated various rules governing our review of applications for modification of custody arrangements. In such cases, the party seeking a change in custody has a burden of showing the circumstances extant at the time the original decree was entered have changed so materially and substantially as to warrant transfer of the children to his or her custody. In re Marriage of Link, 205 N.W.2d 751, 752 (Iowa 1973). The parent seeking to take custody from the other must show some superior claim based on his or her ability to minister, not equally, but more effectively to the childrens' well-being. In re Marriage of Link, *supra*; Crary v. Curtis, 199 N.W.2d 319, 320 (Iowa 1972); Spotts v. Spotts, 197 N.W.2d 370, 371 (Iowa 1972). The best interests of the children involved remain here as in all cases involving the question of custody the first and governing consideration. In re Marriage of Moorhead, 224 N.W.2d 242 (Iowa 1974). In deciding the question, we seek neither to punish one parent nor to reward the other. In re Marriage of Moorhead, *supra*; In re Marriage of Bare, 203 N.W.2d 551, 554 (Iowa 1973).

■ II. As noted above, the parties were divorced by decree entered January 8, 1969. Dennis remarried June 22, 1969. The court file has been certified to us, and we find no application to modify the decree to permit remarriage, although such application may have been made and the decree so modified.

Both Dennis and his present wife, Lois, are employed at Sheaffer Pen Company in Fort Madison, and together had earnings of $14,400 in the calendar year prior to the hearing on the application to modify. They resided in a three-bedroom home in Fort Madison.

Phyllis was employed at Armour-Dial in Fort Madison and collecting take-home pay of $130 per week during the same period. Her husband, Jerry Tilton, to whom she was married on April 19, 1974, was employed at the Burlington Army Ammunition Plant and had take-home pay of about $140 per week. He was obligated to pay $50 per week for the support of four minor children, the issue of his prior marriage which had terminated by divorce some eight years prior to the hearing on the application to modify. Phyllis and Tilton lived in a duplex in Burlington and she commuted to work in Fort Madison. They had just completed arrangements to purchase the duplex in which they were residing, with the purchase to be completed on May 1, 1974. Their living quarters embraced two bedrooms, but it appeared they intended to add a bedroom to the half of the duplex they occupied immediately upon completion of the purchase. They expected to continue to rent the other half of the duplex and to apply the rental on the purchase contract.

Admittedly, Phyllis had been delivered of a child out of wedlock about two years following the entry of decree granting her a divorce from Dennis, and it appears the child had not been fathered by either Dennis or Tilton. It also appears Tilton and Phyllis had been living together from February of 1974, occupied the same bed and that the two children involved here and her third child were also living on the same premises. Dennis contends the court did not give proper consideration to the fact Phyllis had borne a child out of wedlock in

reaching its conclusion the original custody arrangement of the children should not be changed.

We are not persuaded, nor was trial court, the record of Phyllis' conduct necessitates a change in custody. Of course her conduct is a factor to be considered, but it is not the only factor. The children involved here appear to be in good health, and appear to be making more than satisfactory progress in school. A baby-sitter who testified she had charge of them before and after school each working day appeared to support Phyllis' contention the children were normal, developing children. It must be remembered they had been in Phyllis' custody at all times since entry of the decree of divorce in 1969, and perhaps prior thereto in view of the fact the petition had been filed some 16 months before entry of the decree, and were at the time of the hearing on the application to modify nine and seven years of age.

■■ Moral misconduct is a circumstance to be given serious consideration in determining the fitness of a parent to have custody of minor children, but other factors include the age and sex of the children, the environment in which they live, and that to which they might be moved if the application to change custody were granted. We have always accorded trial courts considerable discretion in matters of this kind, even though we review the case *de novo*. See In re Marriage of Dawson, 214 N.W.2d 131, 132 (Iowa 1974); Harwell v. Harwell, 253 Iowa 413, 420, 112 N.W.2d 868, 873; Wendel v. Wendel, 252 Iowa 1122, 1126, 109 N.W.2d 432, 434.

We conclude trial court did not err in finding Phyllis' alleged misconduct was insufficient justification for a change in custody of Patrick and Denise.

■■ III. The evidence establishes Dennis' economic condition has improved since 1969. This factor is indeed the only ground he asserted in his application to modify the decree. The fact the economic condition of Dennis had improved markedly since entry of the decree of divorce in this case and that he is now better able to provide for the creature comforts and material wants of his children is not a primary factor in the consideration of his application for change of custody. The relative economic conditions of divorced parents, while entitled to some consideration, is of little import when we remember the first consideration of courts in cases of this kind is to keep an eye single to the best interest of the children involved. See In re Marriage of Dawson, *supra*.

On the whole record, we conclude trial court was right in refusing to change custody of the minor children involved here. We affirm.

Affirmed.