IN re the MARRIAGE OF Danny Lee MORTON and Linda Lou Morton.

Upon the Petition of Danny Lee Morton, Appellee, and concerning Linda Lou Morton, Appellant.

No. 3-58887.

Supreme Court of Iowa.

Aug. 30, 1976.

A. Frederick Matthias, of Matthias, Tyler, Levin & Nuzum, Newton, for appellant.

Ed Skinner, of Irish, Skinner & Wieslander, Altoona, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

The mother appeals from an order changing custody of a minor child to the father. We reverse the trial court and remand the case for an order continuing custody in the mother.

Danny Lee Morton (Danny) and Linda Lou Morton (Linda) were married April 15, 1972. Linda was 16 at the time. A daughter, Stacy, was born to the couple on October 25, 1972. The marriage was dissolved by decree entered September 24, 1974. The decree gave custody of Stacy to Linda.

About four and one half months after the dissolution Danny married his present wife, Tammy, who was 17 at the time of the hearing on Danny's application to modify. Linda resents Tammy. This resentment can be traced to Tammy's association with Danny at the time when he was still married to Linda. Danny, Linda and Tammy all reside in Newton, Iowa.

After the dissolution Linda went on ADC. At the time of the modification hearing she had part-time employment which required her to work one to three evenings per week. She also attended CI Comp School in Des Moines at the time of hearing for the purpose of obtaining her general equivalency degree (GED).

After the dissolution Linda had a relationship with an unmarried man who resided in Newton. The relationship involved overnight stays and sexual relations. Stacy was present in either her mother's apartment or the apartment of her mother's companion during such stays. Danny offered evidence in an attempt to show Stacy shared a bed with Linda and her companion. On our de novo review we make no such finding.

On several occasions Stacy was with her mother in an automobile in downtown Newton very late at night, often past midnight. On some of these occasions Stacy was asleep and on others she was awake.

The trial court found Linda denied Danny visitation rights. On poor advice from an attorney then representing her ` Linda obtained an unlisted phone number. She did so in order to avoid "harassment" from Tammy. The "harassment" consisted of Tammy's attempts to arrange visitations with Stacy. There is no evidence Linda ever refused a visitation personally requested by Danny. However the unlisted phone number made contact with her more difficult.

From conflicting evidence we find Stacy was well cared for by Linda and was a normal and healthy child. Linda never left Stacy alone without providing an adequate babysitter.

Danny is employed seasonally at an asphalt plant and draws unemployment compensation during the off season. He was apparently over 21 at the time of the hearing. He is interested in Stacy and would like to see Stacy's life generally improved. Danny had not made the $20 per week child support payments required by the original dissolution decree and only commenced making those payments after advice of his counsel. There is evidence that on one or two occasions he struck Linda.

Tammy testified to her willingness to provide Stacy a good home and to her and Danny's ability to rent a larger apartment. She expressed a desire to enroll Stacy in preschool and of her own intention of working toward a GED.

After hearing the evidence the trial court found a material change in circumstances to the extent that a change in custody would be in the best interest of the child. The trial court pointed to there factors to support the change: (1) serious misconduct in that Linda had the affair referred to, spending nights in the apartment of her companion taking Stacy with her; (2) keeping Stacy up at unreasonable hours on the town square, and (3) denying visitation rights to Danny and Danny's parents out of spite. In addition the trial court found Danny and Tammy had married and established a new home and were ready and willing to assume custody of Stacy. The trial court ordered the change of custody of Stacy from Linda to Danny giving reasonable visitation rights to Linda.

I. "No unusual legal principles are involved here. We have on many occasions reiterated various rules governing our review of applications for modification of custody arrangements. In such cases, the party seeking a change in custody has a burden of showing the circumstances extant at the time the original decree was entered have changed so materially and substantially as to warrant transfer of the children to his or her custody. (Authority). The parent seeking to take custody from the other must show some superior claim based on his or her ability to minister, not equally, but more effectively to the childrens' well-being. (Authorities). The best interests of the children involved remain here as in all cases involving the question of custody the first and governing consideration. (Authority). In deciding the question, we seek neither to punish one parent nor to reward the other. (Authorities)." *Hagen v. Hagen,* 226 N.W.2d 13, 15 (Iowa 1975).

"Our review is de novo. Before passing on the custody determination reached by trial court, we have a duty to examine the whole record and adjudicate anew rights on the issues properly presented. In so doing, we give weight to the findings of the trial court but will not abdicate our responsibility to review the record de novo on appeal. (Authority). As in all custody cases we must determine this case ultimately on its own facts. (Authority)." *In re Marriage of Moorhead,* 224 N.W.2d 242, 244 (Iowa 1974).

 We think the evidence falls short of showing a superior claim on Danny's part demonstrating his ability to minister more effectively than Linda to Stacy's well-being. Linda's moral misconduct in the affair referred to is a factor meriting serious con-

sideration. *Schoonover v. Schoonover,* 228 N.W.2d 31, 34 (Iowa 1975). However moral misconduct does not ipso facto preclude the erring parent from custody. *In re Marriage of Dawson,* 214 N.W.2d 131, 132 (Iowa 1974). It is but one factor to be given consideration. We have said:

"Moral misconduct is a circumstance to be given serious consideration in determining the fitness of a parent to have custody of minor children, but other factors include the age and sex of the children, the environment in which they live, and that to which they might be moved if the application to change custody were granted. * * * ." *Hagen,* 226 N.W.2d at 16.

It is apparent the trial court's modification decision cannot rest solely on the ground of Linda's moral misconduct.

■ Neither do we believe the late hour visits to the town square, in which Stacy accompanied her mother, warrant a change of custody. The conduct is not to be commended. See *In re Marriage of Winter,* 223 N.W.2d 165 (Iowa 1974). However Stacy was not shown to be anything but healthy, well adjusted and well rested.

■ Linda's conduct in denying visitations to Danny was wrong. The best interests of the children require the continuing association with their father unless the contrary is clearly shown. *Spotts v. Spotts,* 197 N.W.2d 370, 372 (Iowa 1972). However any wrongdoing by Linda is mitigated by the poor advice she received from her former attorney. It is mitigated even more by Danny's failure to personally arrange for visitations when it was obvious the relationship between Linda and Tammy was strained.

We are not persuaded the home to be provided by Danny and Tammy would be in any way superior to the one provided by Linda. Tammy is not shown to be superior in qualities of homemaking or motherhood. Danny has not demonstrated a consistent and mature sense of responsibility. This lack of responsibility was disclosed by Danny's failure to make ordered child support and his failure to personally arrange for visitations.

We find Danny has failed to meet the burden laid down in *Hagen,* supra.

The decree of the trial court is reversed and the cause remanded for entry of a decree in conformance herewith. Costs on appeal are taxed to Danny.

REVERSED AND REMANDED.