In re the MARRIAGE of Joann BLUME
and Donald R. Blume

Upon the Petition of Joann Blume,
Petitioner–Appellee/Cross–
Appellant,

And Concerning Donald R. Blume,
Respondent–Appellant/Cross–
Appellee.

No. 90–1330.

Court of Appeals of Iowa.

May 29, 1991.

Joseph J. Bitter, Dubuque, for respondent-appellant/cross-appellee.

David J. Grace of Davis, Grace, Horvath, Gonnerman & Rouwenhorst, Des Moines, for petitioner-appellee/cross-appellant.

Heard by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

OXBERGER, Chief Judge.

Joann and Donald Blume were married in 1977. They have two children, Michael and Donna. Following a trial, the Blume's marriage was dissolved by a decree filed July 20, 1990.

Donald, thirty-six years old at trial time, is a farmer. Joann, thirty years old at trial time, worked on the farm throughout the marriage and has little employment experience and no specialized training.

The dissolution decree placed the two children in the couple's joint legal custody and in Joann's primary physical care. The trial court found that Joann was the children's primary caretaker throughout the marriage.

The Blumes owned two tracts of farmland. The decree awarded Joann an 80–acre farm (the Moser farm) which the court valued at $42,000. The decree awarded Don a 95–acre farm (the Lenth farm) with a net value of $34,000 after deducting an unpaid contract balance. The trial court awarded Don all the farm-related personal property, including machinery, livestock, stored grain and growing crops. This farm-related property was valued at $166,000. Each party received various vehicles, personal effects, and small bank accounts. In order to equalize the division of property, the trial court directed Don to pay Joann a cash property award of $60,000, payable in six annual installments bearing interest at the rate of ten percent per year. The trial court also granted Joann a judicial lien against the farm awarded to Don as security for payment.

The decree directed Don to pay Joann child support of $600 per month for both children. He was also ordered to contribute $1500 toward Joann's trial attorney fees.

Don has appealed the dissolution decree, and Joann has cross-appealed.

Don contends the children should be transferred to his physical care. In the alternative, he requests reduction of his child support obligation. Don also challenges the division of property and the award of trial attorney's fees to Joann. Finally, Don contends the district court erred by allowing Joann's attorney to summarize the prospective testimony of certain witnesses by means of professional statements, without presenting the witnesses themselves. The witnesses were present in court and available for cross-examination.

In her cross-appeal, Joann contends she should receive a larger share of the property. She requests an additional $11,000 in cash and argues the district court gave Don too much credit for property he allegedly brought into the marriage.

Joann also requests attorney fees on appeal.

■ SCOPE OF REVIEW. In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ CHILD CUSTODY. In child custody cases, the best interests of the children is the first and governing consideration. The factors to consider in awarding custody are enumerated in Iowa Code section 598.41(3) and in *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration," the determination of what will be in the long-term best interests of the children. *In*

*re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the children is which parent will do better in raising them; gender is irrelevant and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985).

■ The physical custody of siblings should be separated only for good and compelling reasons. *In re Marriage of Winter*, 223 N.W.2d at 168 (citations omitted). A minor child's preference with respect to which parent he or she wishes to live with, although not controlling, is relevant and cannot be ignored. *In re Marriage of Ellerbroek*, 377 N.W.2d 257, 258 (Iowa App. 1985) (citation omitted). In determining the weight to give to a child's preference we consider, among other things, the child's age, educational level, maturity, relationship with family members and reasons given for his or her decision. *See Id.* at 258–59.

■ Michael, who was twelve years old at the time of trial, has expressed a strong desire to live with his father. He has also expressed an intent to pursue farming as a career. Don currently works closely with his father who is also a farmer. Michael participates in many activities on the farm with Don. Donna, who was nine years old at the time of trial, has been less expressive about her preferences, but the record tends to indicate she prefers to live with her mother. During the Blume's separation prior to the trial, Michael lived with Don and Donna lived with Joann. Both parents currently cohabit with another adult.

The trial court found that although both parents were capable of parenting the children, Joann had been the children's primary caretaker during the marriage and could more effectively meet the children's needs as the custodial parent. Additionally, the trial court found insufficient evidence in the record to warrant separating the children in order to place each child in his or her preferred custodial situation.

We agree Joann was the children's primary caretaker throughout the marriage prior to the couple's separation. While the evidence indicates Michael prefers to live with Don, the trial court declined to allow Michael to testify during the proceedings in order to ascertain his specific reasons for his preference. Joann currently lives on a farm approximately seven miles from where Don lives. It appears Michael will have ample opportunity to work with Don on his farm. After considering all the factors which bear on the decision of which parent can better minister to Michael and Donna's future needs, we do not find Michael's preference determinative. Although, Michael appears to be a mature twelve year old child, he is still a twelve year old child with many needs that must be provided by a parent who is able to spend the time with him necessary to meet those needs. Don repeatedly asserts the woman he lives with can spend time with Michael and meet his daily needs. We are not prepared to give that factor great weight in comparison to the fact Michael's mother has met his daily needs the majority of his life and is prepared and capable of continuing to meet those needs.

Both parties, at trial and on appeal, attempted to prove the other party was unfit custodian for the children. Upon our review of the record, both Don and Joann appear quite capable of parenting the children and we see no reason to alter the trial court's decision to place the children in Joann's physical care. The trial court had the opportunity to evaluate the credibility of the witnesses testifying about the parenting skills of Don and Joann and we defer to its decision.

CHILD SUPPORT. The trial court ruled child support should be set in accordance with the child support guidelines adopted by the supreme court and adjusted annually, based upon the annual income reflected by the parties' tax returns, due to the fluctuating nature of Don's income. The trial court found Don's net monthly farm income for 1989 was $1,750. Joann's net monthly income for 1989 was $60 per month. At the time of trial Joann no longer earned a wage, as she had in 1989, for assisting the man she lives with in his farm operation, but she was not responsible for any household expenses.

When using the child support guidelines to determine the amount Don should pay toward the support of the children, the trial court failed to take into consideration Joann's award of one of the farms which comprised the couple's farming unit. We are unable to determine from the record what effect this property division had on Don's income, therefore we remand for further determinations to be made in light of the property division.

The law of Iowa does not favor child support awards which provide a sliding scale based on a parent's fluctuating income. In *In re Marriage of Meeker*, 272 N.W.2d 455, 456 (Iowa 1978), the supreme court rejected an order creating a sliding scale system for child support. The *Meeker* trial court ordered a father's support obligation to be not less than 15 percent of the father's gross annual receipts as reflected on his Federal income tax return and then also set a base and ceiling to the potential amount. In its rejection of the order, the *Meeker* court stated:

> In this case the modified decree provided a sliding scale based on the parents' income alone. We feel this was unsatisfactory since such an order was based on the assumption that a change in only that factor will measure their obligations, whereas we believe there are many factors which properly determine the amount necessary and proper to meet the needs of these growing children. * * * Under the revealed circumstances we feel [the needs] are better met by awarding a definite sum and the avoidance of a complicated computation which invites rather than avoids disputes.

*Id.* (quoting *McDonald v. McDonald*, 183 N.W.2d 186, 189 (Iowa 1971) (citation omitted)).

Although the child support guidelines may not necessarily be described as requiring complicated computations, we nonetheless agree with the rationale that generally child support should be set at a single

amount subject to future modification. We do not find Don's situation significantly different from any parent who owns and operates his or her own business. We believe Don's *average* income can be computed for purposes of applying the child support guidelines. If in the future Don can prove a substantial change of circumstances which is permanent or continuous, then the support provision would be an appropriate matter for modification proceedings. *See In re Marriage of Kern*, 408 N.W.2d 387, 389 (Iowa App.1987).

■ We also note for purposes of remand that the trial court did not clearly make a finding about what Joann's income was for purposes of applying the support guidelines. Both parents have a legal obligation to support their children. *In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976). Joann received farm land and cash as a portion of her property settlement. Property awards may be considered when evaluating a parent's child support obligation. *See In re Marriage of Mead*, 429 N.W.2d 564, 565 (Iowa App.1988). Joann's choice to assist the man she is currently living with in operating his farm without the receipt of a wage does not mean she has no earning capacity for the purposes of applying the child support guidelines. Upon remand, a finding should be made regarding Joann's average earning capacity as well as Don's earning capacity.

We remand this case for further proceedings to determine the amount of child support Don should be ordered to pay in accordance with this opinion and the child support guidelines effective December 31, 1990. Pending the hearing on remand, we order child support to be paid as fixed by the dissolution decree. We do not retain jurisdiction.

PROPERTY SETTLEMENT. Don contends the decree gave Joann too large an amount of property. He asserts the trial court erred in multiple respects which resulted in Joann receiving too large a property settlement. First, he complains the trial court erred by awarding Joann the Moser farm because the award disrupts his farming operation. Secondly, he complains the trial court overvalued the farm machinery awarded to him. Thirdly, he argues he did not receive enough credit for the assets he brought to the marriage. Fourthly, he asserts the court erred in ordering the cash settlement awarded Joann bear interest at the rate of ten percent per year because the legal rate of interest at the time the decree was filed was 8.9 percent. Lastly, Don argues the court undervalued the Moser farm awarded to Joann, whereas he complains the court overvalued the Lenth farm awarded to him.

The partners in a marriage are "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran*, 406 N.W.2d 450, 452 (Iowa App.1987). The property division need not necessarily be equal but rather should be equitable to the parties. *In re Marriage of Callenius*, 309 N.W.2d 510, 514 (Iowa 1981) (citations omitted). In *Callenius*, the supreme court stated "[w]e have previously recognized the reasonableness of a trial court awarding a farm to the spouse who operated it and in fixing the awards and schedule of payments to the other spouse without reaching equality so the farmer-spouse might retain ownership of the farm." *Id.* at 515.

■ Don is a hard worker and has devoted himself to the farming operation. Don apparently feels the farming operation's success is solely attributable to his efforts, but the record does not support his contention. Joann also assisted in the farm operation as well as raising the children and maintaining the household.

■ The Moser farm which was awarded to Joann consists of approximately 80 acres with 51.5 of those acres being tillable. The entire 80 acres is currently in the Conservation Reserve Program (CRP) and will be for approximately seven more years. The trial court valued this farm at $42,000.

The Lenth farm which was awarded to Don consists of 95 acres with 39.6 of those acres being tillable. This farm was pur-

chased on an installment contract. The court placed a net value on this farm, after deducting the unpaid balance of the contract, at $34,000. During the marriage, the couple also had some sort of "share arrangement" with Don's father, who also farms in the area, and they rented other farm land.

Because the Moser farm is currently in the CRP program, it cannot be farmed for the seven years following the decree. This farm does not appear currently to be an integral part of Don's farming unit. Don's main argument about the need to retain this farm in his operation seems to be that in the case of a drought the farm could serve as a corn and hay base for keeping the entire farm operation afloat. We must weigh Don's speculations about future natural disasters against the facts Joann worked hard in ensuring the prosperity of the farm operation during the marriage and she did not receive any alimony.

We find in the circumstances of this case, the trial court fashioned an equitable division of property that did not unduly endanger the farming operation Don will continue to run. Additionally, we have evaluated the division as a whole and find the value placed on the assets by the trial court to be well within the permissible range of evidence and will not disturb them on appeal. See In re Marriage of Bare, 203 N.W.2d 551, 554 (Iowa 1973); In re Marriage of Griffin, 356 N.W.2d 606, 608 (Iowa App.1984).

The value of the assets which Don brought to the marriage was in dispute and Don had very little evidence, other than his bald assertions, about the assets he brought into the marriage. We refuse to disturb the trial court's property division based on either party's speculative figures and values.

■ Lastly, we do not agree with Don that the trial court erred in ordering the cash settlement awarded to Joann earn interest at the rate of ten percent per year. The trial court granted Joann a judicial lien on the Lenth farm as security for the payment of the award. Iowa Code section 535.3 (1989) provides in part: "Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year, unless a different rate is fixed by the contract on which the judgment or decree is rendered, . . . ." The trial court properly set the interest rate at the statutory rate. Don has failed to show the circumstances of the economic division warrants a departure from the statutory interest rate. See In re Marriage of Friedman, 466 N.W.2d 689, 693 (Iowa 1991).

■ ATTORNEY FEES. Don argues the trial court abused its discretion by awarding Joann attorney fees. Don claims the trial court erroneously blamed him for failing to cooperate regarding production of financial information and failed to take into consideration Joann's alleged false testimony about maintaining an apartment during the separation.

Iowa trial courts are permitted considerable discretion in allowing attorney's fees and costs in dissolution actions. In re Marriage of Moorhead, 224 N.W.2d 242, 245 (Iowa 1974). Upon our review of the record we do not find the trial court abused its discretion by awarding Joann attorney fees.

■ Joann has requested attorney fees for this appeal. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. In re Marriage of Kern, 408 N.W.2d 387, 390 (Iowa App.1987). We consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. In re Marriage of Castle, 312 N.W.2d 147, 150 (Iowa App. 1981). Relying on these considerations we order Don to pay $750 towards Joann's appellate attorney fees.

■ EVIDENCE. Lastly, Don argues the trial court erred by allowing Joann's attorney to summarize the testimony of two witnesses in the form of a professional statement instead of presenting the witnesses themselves to testify. Both witnesses were available for cross-examination, but only one was actually cross-exam-

ined. Following the first professional statement summarizing testimony, Don's attorney objected that the testimony was just a "re-hash" of the case in chief and therefore improper rebuttal, it contained hearsay, irrelevant statements, and a document summarizing one of the potential witness's diary lacked a foundation for admission.

Upon our review of the record, we conclude the trial court should not have admitted this manner of testimony in light of the objections made by Don's attorney. Therefore, we have not considered the testimony in our de novo review.

CONCLUSION. We affirm the dissolution decree in all respects except the provision setting Don's child support obligation. We remand this case for further determinations and a child support order in accordance with this opinion and the child support guidelines. We order Don to pay $750 towards Joann's appellate attorney fees. The costs of this appeal are taxed to Don.

AFFIRMED IN PART AND REMANDED.