In re the MARRIAGE OF Michael V. HARRIS and Rose A. Harris.

Upon the Petition of Michael V. Harris, Appellant,

And Concerning Rose A. Harris, Appellee.

No. 92–981.

Court of Appeals of Iowa.

Feb. 23, 1993.

Barry S. Kaplan of Fairall, Fairall, Kaplan, Hoglan, Condon & Klaessy, Marshalltown, for appellant.

Harry L. Haywood of Haywood Law Office, Eldora, for appellee.

Larry W. Johnson of Walters & Johnson, Iowa Falls, guardian ad litem for minor children.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

Michael Harris appeals from the provision of the parties' dissolution decree awarding physical custody of the two minor children to Rose Harris.

Michael and Rose were married in October 1980. They are the parents of two minor children, Joshua, born in 1983, and Melissa, born in 1990. Shortly after Melissa's birth, the parties separated. Michael filed a petition for dissolution of marriage in April 1991. In January 1992, Michael amended the petition, seeking physical custody of the children.

Rose is a certified nurse's aide. She is currently unemployed and receives food stamps and ADC. She lives in a two-bedroom home and receives a rental subsidy. She briefly had lived with a man who was eighteen years of age. Rose has been convicted two times of operating a vehicle while intoxicated (OWI) and possesses neither a driver's license nor a vehicle.

Michael is employed by the Iowa Training School for Boys in Eldora. His net monthly income is about $1122. He began cohabiting with Debbie Barker while his dissolution was still pending. In May 1991, Michael and Debbie purchased a three-bedroom home by contract, putting $2000 down. Debbie has two teenage daughters who live with them.

A trial was held on the issue of physical custody. Michael testified Rose had a serious drinking problem which she had not admitted. Michael pointed to her two convictions for OWI and to an incident in which Rose pleaded guilty for criminal mischief after spray painting Debbie's car.

Dr. Carroll Roland, a licensed psychologist, was consulted to make a recommendation regarding physical care of the children. Following several tests, interviews, and observations of the parents with the children, Dr. Roland concluded physical custody should be awarded to Michael. Larry Johnson, the children's guardian ad litem, also recommended Michael be awarded physical custody of the children based upon his contacts with the children and the parents.

Following trial, the district court awarded physical custody to Rose. The district court found Rose had been more honest about her shortcomings and problems and Michael appeared to be staged and less committed to parenting. The court noted Rose had been the primary physical caretaker and Michael only became interested in physical custody midway in the dissolution proceedings. The district court found it would be easier to change Rose's alcohol problem than to change Michael's parenting skills. The court ordered Michael to pay $448 per month child support.

Michael now appeals. He contends the district court erred in placing physical custody of the two children with Rose.

In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. In re Marriage of Steenhoek, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in In re Marriage of Weidner, 338 N.W.2d 351, 355–56 (Iowa 1983), and in In re Marriage of Winter, 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration," the court's determination of what will be in the long-term best interests of the child. In re Marriage of Vrban, 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child. In re Marriage of Ullerich, 367 N.W.2d 297, 299 (Iowa App.1985). Gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. Id.

We find it is in the best interests of the children to award physical custody to Michael. Although we do not make this finding easily, this court is especially concerned about Rose's lack of maturity and her inability to accept responsibility for her own actions. The record is replete with instances of Rose's confrontations with the law. In 1983, Rose was first convicted of OWI. She received her second conviction for OWI in January 1991. Rose's driver's license has been suspended since 1980, and she has been charged with driving while license suspended. (Her license was revoked following the second OWI.) Rose was convicted of theft involving a $20 check in the spring of 1991. In September 1991, Rose was convicted for criminal mischief after she spray painted Debbie Parker's car. Rose also admitted a criminal charge of interfering with official acts. Even though Rose has not had a driver's license since 1980 and she has been convicted of two OWI offenses, Rose testified at trial that she still drove "if I have to go to the store and get food." Several witnesses testified they had seen Rose driving a car on numerous occasions.

Many of Rose's problems appear to be related to alcohol abuse. Rose attributed the criminal mischief incident in part to her consumption of alcohol. Several witnesses testified to one incident which occurred prior to the dissolution in which Rose was intoxicated and drove into a ditch with Joshua in the car. Debbie testified that, in June 1991, when she returned the children to Rose's home from visitation, Rose was passed out and would not answer the door. Joshua had to crawl through a window in order to wake his mother up. On more than one occasion, Rose brought the children to Michael for his visitation in an obvious state of intoxication.

In his recommendation, the guardian ad litem noted Joshua had told him his mother drank too much. In Dr. Roland's evaluation, Rose admitted to drinking to the point of intoxication on at least two occasions per week. However, at trial Rose adamantly denied she had a drinking problem and denied making that statement to Dr. Roland.

Nevertheless, the district court found "[e]xcept for isolated instances, [Rose's alcohol] abuse has not directly affected her children." We cannot agree with this finding. The children had to stay with relatives while their mother spent seven days in jail for an OWI. Rose's driver's license has been revoked as a result of her OWI, and therefore she cannot legally drive. Joshua has commented about his mother's drinking. Finally, on numerous occasions the children have been with their mother while she has been intoxicated.

Rose has engaged in immature behavior, especially towards Debbie, Michael's fiancee. Debbie testified that, after the separation, Rose repeatedly called her at work and home. She made threats such as "I'm going to get you, kill you, hurt you." She also confronted Debbie in a grocery store parking lot, and threatened her. Such behavior hardly provides the children with a stable, mature role model.

We agree the findings of neither Dr. Roland nor the guardian ad litem are controlling. *See In re Marriage of Dawson*, 214 N.W.2d 131, 133 (Iowa 1974). Nevertheless, we give considerable weight to the recommendations of both Dr. Roland and the guardian ad litem. Both had opportunities to meet with the parents and to observe the interaction between each parent and the children. We note the district court did not have the opportunity to speak with the children or to observe the children interact with either parent.

The district court based much of its decision on the the belief that: "[the] correction of [Rose's alcohol problem] is easier than to correct a lack of parenting skills, priorities, and caring for the children's best interests." While there is definite room for improvement, we do not agree Michael has demonstrated a lack of parenting skills, priorities, or ability to care for the children. Michael took a second job to pay for the services of Dr. Roland. Michael has demonstrated he can provide the children with a stable home. He and Debbie now live in a three-bedroom home. Debbie's older daughters, ages fourteen and sixteen, have

helped to care for Joshua and Melissa. Michael continues to work full-time at the Boy's Training School. At the time of trial, Michael planned to leave his second job if he was awarded physical custody in order to spend more time with his children.

The district court also based its decision in part on the lack of bonding between Michael and his daughter Melissa. The court noted Michael had not been around during the crucial periods of Melissa's early development. However, in his findings, Dr. Roland observed the interaction between Michael and Melissa was "quite positive." Dr. Roland noted "Melissa seemed at ease with her father and did not show any discomfort in his presence." Dr. Roland's finding was made during a fifteen-minute observation in Dr. Roland's office. While the court criticized the "clumsy, sterile" atmosphere of this setting, we would expect the interaction between Michael and Melissa to be even better in an atmosphere such as Michael's own home.

The court also criticized Michael for missing visitation with the children. The missed visitation was often caused by Michael's second job and its accompanying demands on Michael's free time. Despite the fact Michael missed several visitations, he has continued to work towards providing a stable and nurturing environment for the children if awarded custody. We expect both parties to be cooperative in working out visitation which would be conducive to their working schedules.

■ Further, we give little weight to the alleged "moral misconduct" Michael displayed by entering into a permanent relationship with Debbie before his dissolution was finalized. Admittedly, moral misconduct is a serious consideration in custody determinations. *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986) (citation omitted). However, this misconduct is only one of several factors to be considered. *Id.* We find Rose's alcohol problems, her disregard for the law, and her lack of economic stability are far more serious threats to the well-being of the children than is the fact Michael has chosen

to cohabit with another woman to whom he is not married.

In making the determination of with which parent the children's best interests will be served, "... our objective is to place the children in the environment most likely to bring the children to healthy physical, mental and social maturity." *In re Marriage of Bartlett*, 427 N.W.2d 876, 877 (Iowa App.1988) (citing *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988)). Although we recognize Rose has done much of the parenting of these children in their early years, we must consider the long-term best interests of the children. *See In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984).

Michael has demonstrated a sincere, endeavored desire to parent the children and offers the children a stable and comfortable home. Rose continues to deny her problems with alcohol and has demonstrated no efforts towards improving her current living situation. Rose continues to drink. She is unemployed and lives in a two-bedroom home with subsidized rent. She does not have a telephone. As she has lost her driver's license, she must either rely upon others to be transported or drive illegally. In other words, Michael has improved his ability to parent and Rose simply has not. We therefore modify the decree of the district court, and award primary physical custody to Michael.

■ We are concerned about the denial of visitation on the part of both parties. We remind both Michael and Rose that liberal visitation rights are in the best interests of the children. Iowa Code § 598.-41(1) (1991); *In re Marriage of Muell*, 408 N.W.2d 774, 777 (Iowa App.1987). Both parents, as joint custodians, are charged with maintaining those interests. Unless visitation with the noncustodial parent will in some way injure the child, it is not to be prohibited. *Fitch v. Fitch*, 207 Iowa 1193, 1197, 224 N.W. 503, 504 (1929).

We are unable from this record to create a visitation schedule or to compute Rose's child support obligation. We remand to the district court for that purpose and we do not retain jurisdiction. *See In re Mar-*

*riage of Craig,* 462 N.W.2d 692, 693 (Iowa App.1990).

The costs of this appeal are taxed one-half to Michael and one-half to Rose.

For the reasons stated, the judgment of the district court is affirmed as modified.

**AFFIRMED AS MODIFIED AND RE-MANDED.**