In re the Marriage of Lynne L. POTHAST and Douglas A. Pothast

Upon the Petition of Lynne L. Pothast, Petitioner–Appellant,

And Concerning Douglas A. Pothast, Respondent–Appellee.

No. 94–1895.

Court of Appeals of Iowa.

Aug. 17, 1995.

**200**

Barry S. Kaplan of Fairall, Fairall, Kaplan, Hoglan, Condon, Klaessy, Marshalltown, for appellant.

William J. Lorenz of Welp, Harrison, Brennecke & Moore, Marshalltown, for appellee.

Considered by DONIELSON, C.J., and HAYDEN and HUITINK, JJ.

HAYDEN, Judge.

Lynne and Douglas Pothast were married in 1986. The marriage was the first for Lynne and the second for Douglas. They have one child, Jed, born on September 17, 1989. Lynne has a high school education and obtained her LPN degree in 1977. She has worked at the Iowa Veterans home in Marshalltown since 1980. Lynne earns a net monthly income of $1700 plus $110 per month working for her union. Douglas has a college education and worked for Fisher

Controls in Marshalltown from 1974 until his termination in February 1993.

Lynne brought several items of property into the marriage, including her IPERS account, a Mazda pickup, a 1970 Corvette, IRAs, furniture, a motorcycle, and a house on Summit Street. The home was purchased two years prior to the marriage. Douglas brought into the marriage vehicles valued at $24,000, equity in a home valued at $2929, $1000 in furnishings, $4000 in cash, and a retirement account valued at $13,190. The parties continued to reside at the Summit Street address after the marriage. At the time of trial, the home was valued at $59,000. After their marriage, Douglas purchased a farm with his family. At the time of trial, the farmland had a net value of $17,304. Lynne also accumulated a considerable collection of diamonds which were valued at $17,500 at the time of trial.

Lynne filed the present petition for dissolution on November 12, 1993. Although the parties were separated, they still lived in the same house and shared custody of Jed until the date of trial in July 1994. At trial Lynne claimed she should be awarded custody of Jed because she was the primary caretaker until Douglas lost his job in 1993. She further claimed that Douglas has a serious alcohol problem but will not admit it and refuses to consult a doctor about treatment. Douglas maintained that Lynne had several extramarital affairs. He alleged that one of the affairs was with Don McKee, the president of AFSCME. He asserted that Lynne, McKee, and Jed all slept in the same room during numerous weekend outings. Dr. Carroll Roland, at the request of both parties, conducted a child case custody evaluation on both Lynne and Douglas and ultimately recommended that placement of Jed be with Douglas. Dr. Roland, however, tempered his recommendation with a suggestion that Douglas have an alcohol evaluation.

The district court awarded custody of Jed to Douglas. The court cited Lynne's extramarital affairs and other inappropriate conduct as weighing against her obtaining custody. Lynne was ordered to pay Douglas child support in the amount of $411 per month. Lynne was awarded her IPERS account, her Holden account, her IRAs, a Ford Explorer, the Corvette, the diamonds, her credit union account, the furniture in the Summit Street house, and some U.S. bonds. The court ordered Lynne to sell the Summit Street house. The court, however, provided that if she wished to stay in the home, she would have to pay Douglas $40,000. Douglas was awarded his retirement account, a Ford Ranger, certain stocks, farmland and farm machinery, crops, and a boat valued at $3500. Douglas subsequently filed a rule 179(b) motion. The court granted the motion, correcting Douglas's share of the house proceeds to $47,500. Lynne has appealed.

Lynne argues the district court erred in awarding physical care of Jed to Douglas. She maintains his drinking is not conducive for a healthy environment for Jed. She additionally argues that it was not until 1993 that Douglas began spending time with Jed. She asserts she was Jed's primary caretaker and would be better able to provide for his welfare. Lynne next contends the property division was inequitable because she is required to pay Douglas $47,500. She maintains that all Douglas should receive from her is a $20,000 payment. Lynne claims the district court erroneously included the diamonds as marital assets. She also contends she should be awarded the income tax exemption if she is required to pay child support.

## I. Standard of Review.

■■■ The principles governing our review in proceedings of this nature are familiar and well established. The standard of review for all issues presented is de novo. Iowa R.App.P. 4. Accordingly, we review the facts and the law and determine the parties' rights anew where issues have been properly presented and preserved. *In re Marriage of Havran*, 406 N.W.2d 450, 451 (Iowa App.1987) (citation omitted). Although we are not bound by the trial court's findings, we do give them weight. *Id.* We base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983); *In re Marriage of Riddle*, 500 N.W.2d 718, 719 (Iowa App. 1993).

## II. Equitable Division of Property.

Petitioner contends the trial court erred in its distribution of property by awarding respondent $47,500 from the sale of the residence at 614 Summit Street. Except for inherited property or gifts received by one party, property should be divided equitably between the parties after considering the factors enumerated in Iowa Code section 598.21(1)(a)—(m) 1993. A justified property division is *one equitable under the circumstances*. *In re Marriage of Castle*, 312 N.W.2d 147, 149 (Iowa App.1981) (citations omitted) (emphasis added). Each party should receive an equitable share of the property accumulated through their joint efforts. *Havran*, 406 N.W.2d at 452 (citation omitted).

The trial court left petitioner with a net property division of $83,982, leaving respondent with a net property division of $41,759.99, less than half awarded to petitioner. In an attempt to provide an equitable solution, the trial court awarded respondent $47,500 from the sale of the residence at 614 Summit Street. The residence was purchased for $37,000 in 1985. During the marriage the property appreciated to the sum of $59,000. The appreciation was due to inflation and efforts made by respondent to enhance the property. In addition to respondent's efforts, the parties invested 17,219 in cash in the residence. 16,125 came directly from respondent. Under these circumstances, respondent is entitled to the majority of the proceeds resulting from the sale of this home.

We affirm the trial court's decision to award respondent $47,500 from the sale of the residence at 514 Summit Street.

## III. Child Custody.

Petitioner contends the trial court erred awarding custody of the child to respondent. The factors we consider in determining child custody disputes are enumerated in Iowa Code section 598.41(3) and in the cases of *In re Marriage of Weidner*, 338 N.W.2d 351, 355–56 (Iowa 1983), and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (citations omitted).

All factors bear on the "first and governing consideration," the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). Recently, we have said the objective in resolving a custody dispute is to place the child in an environment most likely to bring the child to healthy physical, mental, and social maturity. *In re Marriage of Rodgers*, 470 N.W.2d 43, 45 (Iowa App.1991) (citation omitted). The critical issue is who will do a better job parenting the child. *Riddle*, 500 N.W.2d at 719 (citation omitted); *In re Marriage of Harris*, 499 N.W.2d 329, 330 (Iowa App.1993) (citation omitted). After an evaluation of the circumstances, it is apparent the trial court correctly placed custody with respondent.

First, the child custody evaluator recommended respondent receive custody of the child. The evaluator performed various psychological tests and observed both parents with the child. The evaluator found the child had an overwhelming preference for respondent on his psychological tests. The second evaluation proffered by petitioner, conducted with only mother and child, is of little value and accords little weight. *In re Marriage of Scheffert*, 492 N.W.2d 203, 205 (Iowa App.1992).

Secondly, respondent has been the primary caretaker for the last two years and has developed a positive and stable relationship with his son. Petitioner's own mother and sister testified Jed should be placed with respondent. Doug will provide an environment most likely to bring Jed to a healthy physical, mental, and social maturity. *Rodgers*, 470 N.W.2d at 45 (citation omitted).

Finally, petitioner exercised poor judgment when she slept with a boyfriend in front of the child in a motel room. Taking a child to a home, or elsewhere, where the child would know his mother was in bed with a man to whom she was not married, is not looked upon as acceptable social conduct, nor is it considered appropriate parenting. *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986) (citations omitted). Moral misconduct by one parent is given serious con-

sideration in determining custody. *Zabecki,* 389 N.W.2d at 398; *In re Marriage of Morton,* 244 N.W.2d 819, 821–22 (Iowa 1976); *Hagen v. Hagen,* 226 N.W.2d 13, 16 (Iowa 1975); *In re Marriage of Worthington,* 504 N.W.2d 147, 150 (Iowa App.1993).

The child custody evaluator testified Lynne's conduct was inappropriate and showed very poor judgment. The evaluator further testified about the potentially devastating effects petitioner's actions could have on Jed emotionally. Petitioner's conduct is demonstrative of her lack of good judgment in parenting the child.

In consideration of the factors of this case, we affirm the trial court's decision to place custody with respondent.

### IV. Income Tax Exemption.

Petitioner contends the trial court erred by not awarding her the Iowa and federal income tax exemptions. The trial court's findings of fact, conclusions, and decree are silent as to which party is granted the dependency exemptions for the federal and Iowa income tax returns.

Our supreme court held if primary care remains in one parent, and the noncustodial parent is current on all child support obligations, then the noncustodial parent may be awarded the dependency exemptions. *In re Marriage of Walsh,* 451 N.W.2d 492, 493 (Iowa 1990); *In re Marriage of Miller,* 475 N.W.2d 675, 679 (Iowa App.1991). The tax exemptions for Jed should be allocated to petitioner. Petitioner is paying substantial child support. Furthermore, at respondent's income level, the exemptions are of minimal value to him.

We modify the decree to give petitioner the federal and state tax exemptions for the child, Jed, so long as she is current in all child support at the end of each year. Respondent shall each year sign and execute the required forms for Lynne to claim the deduction on both her federal and state income tax returns for Jed for the preceding calendar year.

We affirm the trial court's distribution of the property and its decision to place custody of the child with respondent. We modify the trial court's decree and grant petitioner the federal and Iowa income tax exemptions for her son.

### AFFIRMED IN PART AND MODIFIED IN PART.