# IN THE COURT OF APPEALS OF IOWA

No. 18-1401
Filed April 17, 2019

**JESSE JOE BLAIR,**
        Plaintiff-Appellant,

**vs.**

**TRISH SCOTT n/k/a TRISH WEIMAR,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Clay County, David A. Lester, Judge.

        Jesse Blair appeals the order establishing paternity, custody, and visitation of the child he shares with Trish Weimar.  **AFFIRMED.**

        Matthew G. Sease of Kemp & Sease, Des Moines, for appellant.

        Debra S. De Jong of De Jong Law Firm, P.C., Orange City, for appellee.

        Considered by Doyle, P.J., Mullins, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DOYLE, Presiding Judge.**

Jesse Blair appeals the order establishing paternity, custody, and visitation of the child he shares with Trish Scott, now known as Trish Weimar.  He contends the court erred in granting Trish physical care of the child.  We affirm for the reasons that follow.

Jesse and Trish are parents of four-year-old J.A.B.  They lived together when J.A.B. was born and separated when she was one.  Initially, Trish had physical care of J.A.B., but within a year, Jesse had J.A.B. in his care two or three days per week with Trish having her the remaining days.

Since separating, Jesse has had a son with another woman.  Trish eventually married and had a daughter with Richard Weimar.  In April 2016, Trish moved to Minnesota due to Richard's job promotion.  After the move, she and Jesse agreed to share care of J.A.B. on a weekly basis with child exchange occurring each Sunday at 4:00 p.m.

In April 2016, Jesse filed a petition to establish paternity, custody, and visitation regarding J.A.B.  At the time of the June 2017 bench trial, Jesse was thirty-five years old and lived in a home in Spencer he shares with his fifteen-year-old son.  He also shares physical care of his nineteen-month-old son.  Trish was thirty-nine years old and lived in Janesville, Minnesota with Richard and their eight-month-old daughter.

On August 1, 2018, the district court entered its order concerning custody, support, and visitation.  The court found that although Jesse's share of J.A.B.'s care had increased since the parties' separation, Trish has been J.A.B.'s primary caregiver.  The court also found that Trish has provided J.A.B. consistent financial

support, would continue to promote Jesse's relationship with J.A.B., and has assumed an appropriate parental role for J.A.B. In light of these factors and Trish's marriage to Richard, the court granted physical care of J.A.B. to Trish.

We review custody determinations de novo. *See Mason v. Hall*, 419 N.W.2d 367, 369 (Iowa 1988) (stating the appellate court reviews custody determinations made in paternity actions de novo). Although we may give weight to the district court's fact findings, we are not bound by them. *See Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). Our first and governing consideration is the best interests of the child. *See* Iowa R. App. P. 6.904(3)(o). Our goal is to place the child in the care of the parent who is best able to minister to the child's long-term best interests. *See In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974). In making this determination, we consider the list of factors set forth in Iowa Code section 598.41 (2016), along with other relevant factors. *See In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). We seek to place the child in the environment most likely to foster physical and mental health, as well as social maturity. *See Phillips*, 541 N.W.2d at 847.

In determining what custody arrangement is in the child's best interests, the court must consider what arrangement "will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents . . . , and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child." Iowa Code § 598.41(1)(a); *see also id.* § 600B.40 (applying section 598.41 to paternity cases). Typically, we have afforded weight to the parent who has acted as the child's primary caretaker in the past, noting that successful caregiving by one

parent in the past is a strong predictor that the child's future care will be of the same quality. *See Hansen*, 733 N.W.2d at 696-97 (noting the importance of affording children stability and continuity in determining custody).

In the two years leading up to trial, the parties have had joint physical care of J.A.B. Due J.A.B.'s age and the distance between the parties' homes, the parties agree that a joint-physical-care arrangement is no longer feasible. Required to determine which of these two parents is better equipped to act as J.A.B.'s caretaker, the district granted Trish physical care based primarily on her caregiving history. On appeal, Jesse argues the record shows he is the more stable parent and is better equipped to promote J.A.B.'s relationship with family members and siblings. Trish, of course, disputes these claims.

Jesse also claims the district court improperly considered financial status in making the custody determination. He notes that the parties' individual incomes are largely equal. He also notes our supreme court's holding that "the relative financial status of the parties is not a controlling factor since poverty alone has never been accepted as a sound basis for declining to give either parent the custody and control of the issue of the marriage." *In re Jennerjohn's Marriage*, 203 N.W.2d 237, 243 (Iowa 1972). Although the parties' relative economic conditions are "entitled to some consideration," *Hagen v. Hagen*, 226 N.W.2d 13, 16 (Iowa 1975), we find it of little consequence here.

Finally, Jesse claims the court considered an improper factor in determining custody when it observed that "placing J.A.B. with Trish will result in J.A.B. being raised in the more traditional home environment where the adults within that home are married." He argues this statement implies that he "is being penalized for not

rushing into a new relationship and getting married." He also notes there is no evidence to support a finding that being raised by a married man and woman is more beneficial to a child. We agree and find the district court's statement to be ill-advised. But, as has often been repeated, our primary consideration is the child's best interests, which requires us "to consider unique custody issues on a case-by-case basis." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

Each parent is capable of providing for J.A.B.'s needs. Each has demonstrated the ability to do so. There is evidence to support granting either physical care. Left, then, to decide which of these two competent and loving parents will serve J.A.B.'s best interests, we concur with the district court's assessment that Trish should be granted physical care. While Jesse has been involved with J.A.B.'s day-to-day care since her birth, historically, Trish has taken on the role of J.A.B.'s caretaker. Though we give no preference to a "traditional home environment" in making this determination, we do note that granting Trish physical care will allow J.A.B. to grow up with her half-sister. *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986) (noting a strong preference for keeping siblings together and holding this principle applies to half-siblings). And although we note that J.A.B. would have more contact with her two half-brothers if placed in Jesse's care, Jesse's older son is considerably older than J.A.B. and will soon reach the age of majority, and his younger son is only in his care half the time. These differences are minor. However, in a case involving two relatively equal parents, they tip the scales in Trish's favor. Accordingly, we affirm the order granting physical care of J.A.B. to Trish.

**AFFIRMED.**