**IN THE COURT OF APPEALS OF IOWA**

No. 14-0303
Filed November 26, 2014

**JOHN LEMKE,**
        Plaintiff-Appellant,

**vs.**

**MANDI LEMKE,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Scott County, Paul L. Macek,
Judge.


        John Lemke appeals from the district court's award of physical care of the
parties' children in its modification of the decree dissolving his marriage to Mandi
Lemke.  **AFFIRMED.**


        Joel Walker, Davenport, for appellant.

        Michael J. McCarthy of McCarthy, Lammers & Hines, Davenport, for
appellee.


        Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

John Lemke appeals from the district court's modification of the decree dissolving his marriage to Mandi Lemke. The parties were married in 2004. They divorced in 2007 but did not separate. In 2008, after they separated, John persuaded Mandi to join his petition to modify the joint physical care provision in their dissolution decree to award John physical care of their four children. Both parents have shared joint legal custody since the dissolution. The parties agree that the children have spent approximately half of their time with each parent since the parties separated.

Mandi petitioned the district court for modification of the physical care provisions of the modified decree on April 1, 2013. After trial, the court issued a modification order on January 27, 2014. The order grants physical care to Mandi but leaves joint legal custody unchanged. It establishes a physical care schedule in which the care of the children alternates between the parents each week.[1] John appeals.

"We review an order modifying a decree for dissolution of marriage de novo." *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). Though they are not binding on us, we give weight to the factual findings of the district court. *Id.* We give particular weight to its findings regarding the credibility of witnesses. *Id.* We will affirm the district court unless it has failed to do equity. *Id.*

---

[1] The modification also changed the child support arrangement. Previously John had been awarded child support from Mandi in a default order in September 2010. The district court's modification order now requires John to pay Mandi $50 per month in child support.

John first argues Mandi did not demonstrate a substantial and material change in circumstances to support her request for modification of physical care. *See In re Marriage of Grantham*, 698 N.W.2d 140, 146 (Iowa 2005) ("[C]ourts should only modify the custodial terms of a dissolution decree if it has been established that conditions since the decree have so materially and substantially changed that the children's best interests make it expedient to make the requested change."). We agree with the district court that Mandi has shown such a change in circumstances.

Many of the troubling issues between Mandi and John predate the 2008 modification granting John physical care, and those issues—of which Mandi certainly had prior knowledge—may not serve as a basis for Mandi's proposed modification. However, between the 2008 modification and this present modification action, John's cooperation with Mandi in managing her visitation rights degenerated to such a degree that the children have been affected, and Mandi has therefore proved a change in circumstances. The precipitous decline of John's ability to work civilly together with Mandi to balance physical care and visitation rights could "not have been contemplated by the court when the decree was entered." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

The district court cites to a litany of John's statements from early 2013[2] demonstrating the level of aggression with which John now tries to control Mandi

---

[2] The district court specifically noted several statements—primarily derived from text messages—John made to Mandi in February and March of 2013, which were the impetus of her petition to modify. The statements indicate John's unwillingness to work together with Mandi and to control her visitation rights. Some of his statements include: "Shut up now or your [sic] not going to have them tomorrow. Shut up." "Stop now or you won't have them tomorrow.I [sic] told you what would happen but u [sic] couldn't shut up, now its donepush [sic] me some more." "Ur [sic] an idiot. . . . I don't care about ur [sic]

and his children. That heightened animosity, including name-calling, renders it contrary to the children's best interests for him to retain physical care.

In 2013, he attempted to create trouble for Mandi by reporting her to the department of human services (DHS) for allowing the children access to a gun. Mandi fully cooperated with the investigation, and DHS found the accusation was baseless. Additionally, John had prior knowledge of the gun in Mandi's house, which indicates his complaint may have been strategically timed to interfere with Mandi's relationship with the children rather than to protect them. Credible testimony before the district court indicates that John manipulated his children into providing false statements to DHS in order to cast Mandi in a bad light with investigators. His recent interference with the children's ability to maintain healthy relationships with both parents is evident from the record.

These developments have occurred since the 2008 modification awarding John physical care. They constitute a substantial and material change in the circumstances of the children's physical care that supports the district court's modification.

John also claims Mandi has not shown "she can parent more effectively" than he can. We agree with the district court that Mandi has established she has "an ability to minister more effectively to the children's well[-]being." *Id.* The record demonstrates John's manipulation of the children to make falsified statements to DHS, heavy student loan debt, bankruptcies, and lack of gainful

---

diatribe." "Pray I don't hear you were saying stupid shit." "If u [sic] say anything to her remotely stupid . . . About me [ . . . ] or anyone one you won't like what happens. Consider yourself warned." These excerpts are from only a one-week period between February 22 and 28, 2013. Similar statements continue throughout March of that year.

employment render him unable to provide superior care to that provided by Mandi. While John argues Mandi's balance of unpaid child support and changes of residence disqualify her from providing superior care, his own financial and emotional instability have created a hostile environment for the children in the recent past. Mandi has shown she can minister more effectively to the children.

John lastly claims the best interests of the children, which are "[t]he first and governing consideration," were not satisfactorily considered by the trial court. *In re Marriage of Melton*, 256 N.W.2d 200, 206 (Iowa 1977). However, the trial court's order was primarily driven by the best interests of the children. In fact, the trial court found that Mandi, in her petition for modification, "place[d] the needs of the children above any understandable impulse to retaliate" against John, whose behavior the district court criticized. The district court stated, "Life for the children and the parties would be enhanced if the visitation arrangement was simple and predictable." It issued an order creating just such an arrangement. The district court properly considered the best interests of the children.

**AFFIRMED.**